In re Estate of Laffoon: Schneider, Tax Commr., Appellant,
v. Laffoon et al., Exrs., Appellees.

(No. 39337—Decided December 22, 1965.)

*Mr. William B. Saxbe,* attorney general, and *Mr. Jon A. Ziegler,* for appellant.

*Mr. Spencer Ferguson* and *Mr. William J. Rielly,* for appellees.

TAFT, C. J. The Tax Commissioner refers to the power involved in the instant case as "a limited or special power of appointment." We believe that the term "limited or special power of appointment" does not describe completely the power here involved. Thus, the donee was permitted to appoint to herself, until her death in 1962, the income accruing from

one-half of the trust after 1941 and from the other half after 1944. To that extent, this gave the donee income that she would have not received without such an exercise of the power. This was apparently permitted on the assumption that the "power * * * to change the proportions, amounts and times of payments to the beneficiaries named" would permit the donee to enlarge the amounts of and extend the times of payments to her of income since she was "'named" as a beneficiary of income from the trust although not named as a beneficiary of principal of the trust. To that extent, the power cannot be classified as a special power because "it can be exercised wholly in favor of the donee" at least for her lifetime. See 3 Restatement of the Law of Property 1828, Section 320. However, so far as it relates to the principal of the trust, all parties apparently recognize that the donor of the power expressed the intention that the power should be a "special power" and thus apparently agree that the donee could have appointed no part of that principal either to herself or her estate.

The Tax Commissioner does not contend that, to the extent that the power was exercised for the benefit of the donee by increasing the income payable to her during her lifetime, the income so received by her should be treated as, to use the words of Section 5731.02, Revised Code, "a succession taxable under this section in the same manner as if the property to which such appointment relates [i. e., the additional income paid to donee in her life] belonged absolutely to the donee * * * and had been bequeathed * * * by said donee by will." Therefore, and since the only power dealt with by either party in the briefs or arguments is that part of the power relating to the principal of the trust estate, we will deal only with that portion. Thus, for the purposes of this opinion, we will consider, as the parties have considered, the power here involved as a power under which the donee had no authority to appoint anything to herself or her estate.

It should be noted further that, although the donee exercised the power during her lifetime, she could have exercised it again at any time before her death. Her failure to do so represented a nonexercise of the power. Hence, even though we should determine that the exercise of the power by a resident

donee is not taxable as a succession, there would still remain the Tax Commissioner's contention that her nonexercise of such power is taxable as a succession.

Therefore, the ultimate question to be determined may be stated as follows:

Where a power of appointment over intangible property was created by a trust set up outside Ohio by one who was never a resident, where the property subject to the power has always been outside Ohio in the custody of nonresident trustees, where the donee of the power had no authority to appoint any part of the property subject to such power to herself or to her estate and where the power was to be exercised only *inter vivos* by a modification of the trust "in writing signed by" the donee "and delivered to the trustee," is either the exercise of such power by such donee when a resident of Ohio or her failure to exercise such power where such donee was a resident at her death taxable as a succession under Section 5731.02(D), Revised Code?

Section 5731.02(D), Revised Code, was first enacted in 1919. It is substantially the same as a statute which originated in and was first enacted in New York in 1897. A similar statute was enacted in Massachusetts in 1909. See Opinions of Attorney General (1922) 536, No. 3237.

In *Matter of Lansing* (1905), 182 N. Y. 238, 74 N. E. 882, a grandfather, before enactment of a statute substantially identical to Section 5731.02(D), Revised Code, left certain property to his daughter in trust for life, with remainder over to his granddaughter but subject to a power in the daughter to appoint the property by will to her heirs or to her collateral heirs. The daughter, after enactment of that statute, did exercise the power by appointing to the granddaughter who was the daughter's only heir.

The granddaughter, who would have taken in default of any appointment, elected not to take under the appointment to her. She contended that she took only under her grandfather's will which became effective before the statute levying the tax, and that it would be unconstitutional to permit the tax to cut down the value of what she took under that prior will. The New York court agreed and stated:

" * * * The theory of a transfer tax is that it is a tax on the right accorded to take under a will or to succeed in case of intestacy which * * * are privileges that may be accorded or denied by the state."

The court distinguished *Matter of Delano* (1903), 176 N. Y. 486, 491, 68 N. E. 871, on the ground that the appointee under the power there involved had to rely upon New York giving effect to a will of the donee of the power in order to get the property appointed, so that New York had power to tax the right of that appointee to take under the donee's New York will.

As to the contention that the statute provided also that the failure or omission to exercise a power of appointment subjected the property to a transfer tax as if the donee of the power had owned the property and devised it by will, the New York court stated that the transfer was from the donor and not from the donee of the power, that transfer was before enactment of the tax statute, and that "where there is no transfer there is no tax."

Because of this and similar holdings, New York amended its statute to eliminate those parts taxing the nonexercise of a power.

However, the same statute had been adopted in Massachusetts, and the Massachusetts court held it constitutional so far as it imposed a tax on the exercise or nonexercise of a power of appointment created before enactment of the statute over property located in Massachusetts and where both the donor and the donee of the power were residents of Massachusetts at the time of their death. *Minot* v. *Treasurer and Receiver General* (1911), 207 Mass. 588, 93 N. E. 973, 33 L. R. A. (N. S.) 236.

In *Walker, Admr.,* v. *Treasurer and Receiver General* (1915), 221 Mass. 600, 109 N. E. 647, the will of the testator domiciled in Maryland had created a testamentary power of appointment over property held in Maryland by a trustee domiciled in Maryland. The donee of the power, who was domiciled in Massachusetts, exercised the power by her will, which was proved in Massachusetts. Massachusetts sought to levy a succession tax with respect to the property passing under the power of appointment. In holding that no such tax could be levied

under a statute substantially identical with Section 5731.02(D), Revised Code, it is said in the court's opinion by Rugg, C. J.:

"It is an implied condition of all statutes relating to taxation that they have no extraterritorial effect. * * * Massachusetts has no control either of the property or its owner. An excise tax may be upheld upon the succession to property where a direct property tax might not be sustained. But in such cases it can stand as a lawful exercise of the taxing power only when some necessary incident of the transfer of title depends for its efficacy upon the law of the state levying the tax. * * *

"* * * where the property is not physically within the jurisdiction of the taxing power and its complete succession may be accomplished without invoking any privilege or sanction conferred by its laws, then there is nothing to which taxation can attach * * *.

"* * * The will of * * * [the Maryland donor] in creating the power of appointment did not provide that the power must be exercised by a will executed according to the law of the domicile of the [Massachusetts] donee, to be proved and allowed in its courts. * * * A different question would be presented if that had been the case. Any instrument recognized by the courts of Maryland as an exercise of the power is sufficient. * * *

"It follows that no privilege by which the property passes, whether by exercise of the power or by failure to exercise it, is conferred by the law of this commonwealth. Hence no commodity exists here on which the tax can be levied. By resort to the courts of Maryland all questions as to the succession of this trust estate will be determined without invoking the law of Massachusetts. That will be settled without dependence upon the moral support or actual assistance of our laws. * * * There is nothing in this commonwealth upon which * * * [the statute corresponding to Section 5731.02(D), Revised Code] can operate."

Undoubtedly, our General Assembly had those decisions before it when it determined to adopt as part of our law what is now Section 5731.02(D), Revised Code. See Opinions of Attorney General (1922) 536, No. 3237.

Since New York had subsequently amended its statute

corresponding to what is now Section 5731.02(D), Revised Code, and Massachusetts had failed to recognize the constitutional infirmaties found by New York in that statute, it is quite apparent that Ohio really adopted this statute from Massachusetts. See Opinions of Attorney General (1922) 536, No. 3237.

Thus, before 1919 when the General Assembly first adopted what is now Section 5731.02(D), Revised Code, from the statutes of New York and Massachusetts, it had before it holdings of the highest courts of both those states that a tax on a transfer under such a statute could only be levied on the exercise of rights or privileges that were accorded by the taxing state.

Four years before that adoption, the highest court in Massachusetts had held in the *Walker case* (221 Mass. 600) that a state has no power to tax the succession to property located outside the state where no incident whatever of the transfer of title to such property is in any way dependent for its effect upon the law of the taxing state, that to permit such a tax would be to give extraterritorial effect to the state's taxing statutes, and that it is an implied condition of all statutes relating to taxation that they have no extraterritorial effect.

We agree that it is an implied condition of all statutes relating to taxation that they have no extraterritorial effect. *Frick* v. *Pennsylvania* (1925), 268 U. S. 473, 69 L. Ed. 1058; *Singer Sewing Machine Co.* v. *Brickell, Atty. Genl.* (1914), 233 U. S. 304, 58 L. Ed. 974; *Union Refrigerator Transit Co.* v. *Kentucky* (1905), 199 U. S. 194, 50 L. Ed. 150; *Louisville and Jeffersonville Ferry Co.* v. *Kentucky* (1903), 188 U. S. 385, 47 L. Ed. 513. See *Cassidy* v. *Ellerhorst* (1924), 110 Ohio St. 535, 540, 144 N. E. 252. See, also, 50 American Jurisprudence 510, Section 487; 51 American Jurisprudence 88, Section 59; 50 Ohio Jurisprudence 2d 322, Section 345.

Also, where the Ohio General Assembly has adopted statutory provisions from another state after those provisions have been construed by the highest court of that state, such construction will be given great weight in this state and will usually be followed. *McNary* v. *State* (1934), 128 Ohio St. 497, 191 N. E. 733; *Black River Lumber Co.* v. *Kent* (1931), 124 Ohio St. 20, 176 N. E. 662; *Chapel State Theatre Co.* v. *Hooper* (1931), 123 Ohio St. 322, 175 N. E. 450, affirmed, 284 U. S. 588, 76 L. Ed.

508; *Cohen* v. *P. J. Spitz Co.* (1929), 121 Ohio St. 1, 166 N. E. 804, 64 A. L. R. 1421; *Ives* v. *McNicoll* (1899), 59 Ohio St. 402, 53 N. E. 60. See, also, 82 Corpus Juris Secundum 860, Section 372; 50 Ohio Jurisprudence 2d 282, Section 299.

Furthermore, a court should, if possible, give a statute such construction as will permit it to operate lawfully and constitutionally. *Kent* v. *Dulles, Secy. of State* (1958), 357 U. S. 116, 2 L. Ed. 2d 1204; *American Power & Light Co.* v. *Securities & Exchange Comm.* (1946), 329 U. S. 90, 91 L. Ed. 103; *Alabama State Federation of Labor* v. *McAdory* (1945), 325 U. S. 450, 89 L. Ed. 1725; *National Labor Relations Board* v. *Jones & Laughlin Steel Corp.* (1937), 301 U. S. 1, 81 L. Ed. 893; *Porter, Aud.,* v. *Investors Syndicate* (1932), 286 U. S. 461, 76 L. Ed. 1226; *Singer Sewing Machine Co.* v. *Brickell, Atty. Genl., supra*; *Wilson* v. *Kennedy* (1949), 151 Ohio St. 485, 86 N. E. 2d 722; *Chambers* v. *Owens-Ames-Kimball Co.* (1946), 146 Ohio St. 559, 67 N. E. 2d 439, 165 A. L. R. 1373; *Winslow-Spacarb, Inc.,* v. *Evatt, Tax Commr.* (1945), 144 Ohio St. 471, 59 N. E. 2d 924; *State, ex rel. Mack, Judge,* v. *Guckenberger, Aud.* (1942), 139 Ohio St. 273, 39 N. E. 2d 840. See, also, 16 American Jurisprudence 2d 345, Section 144; 16 Corpus Juris Secundum 357 *et seq.,* Sections 98 and 99.

In the instant case, the power of appointment was to be, and was, exercised by a simple "modification" of the trust "in writing signed by" the donee of the power "and delivered to the trustee." Such exercise of the power could not take effect until delivered to the trustee. That delivery was outside Ohio. With regard to such execution of the power, to use the words of the New York Court of Appeals in the *Lansing case,* Ohio provided no "privileges that may be accorded or denied by the state"; and, to use the words of the Supreme Judicial Court of Massachusetts in the *Walker case,* "no privilege by which the property passes, whether by exercise of the power or by failure to exercise it, is conferred by the law of" Ohio and "all questions as to the succession of this trust estate will be determined without involving the law of" Ohio.

*Matter of Canda* (1921), 197 App. Div. 597, 189 N. Y. Supp. 917, held that the execution by a resident of a power given by the will of a nonresident to dispose of trust property located in

another state was not taxable because the will exercising the power was probated in the other state so that no assistance from the laws of New York was necessary to pass title to the property. To the same effect see *Matter of Thomas* (1902), 39 Misc. 136, 78 N. Y. Supp. 981; *Matter of Brett* (1922), 123 Misc. 507, 205 N. Y. Supp. 154; and *Matter of Burch* (1936), 160 Misc. 342, 289 N. Y. Supp. 966.

Most of the cases relied upon by the Tax Commissioner, that involved powers created by nonresidents in resident donees over out-of-state property, are distinguishable from the instant case because they each involved some reliance upon the law of the domicile of the donee of the power to effect passage of title to the property subject to the power as justification for imposing a tax on exercise of the power. Cases of this kind are *Matter of Delano, supra* (176 N. Y. 486) (so distinguished in *Matter of Lansing, supra* [182 N. Y. 238]); *Graves* v. *Schmidlapp et al., Exrs.* (1942), 315 U. S. 657, 663, 86 L. Ed. 1097 ("* * * the New York will is the implement of its exercise, made effective as a will by New York law whose aid the decedent [donee] invoked for the exercise and enjoyment of the property right [a general power] conferred on him by the Massachusetts will"); *Matter of Wendell* (1918), 223 N. Y. 433, 119 N. E. 879 (power to appoint by will or deed exercised by deed of New York real estate, which deed was necessarily dependent for its validity and effect on law of taxing state); *Commonwealth* v. *Davis, Exr.* (1958), 200 Va. 308, 105 S. E. 2d 819; *Kuchel, Controller,* v. *Newton* (1950), 35 Cal. 2d 830, 221 P. 2d 959; *Ream* v. *Department of Revenue* (1951), 314 Ky. 539, 236 S. W. 2d 462; *State, ex rel. Smith, Atty. Genl.,* v. *Probate Court* (1914), 124 Minn. 508, 145 N. W. 390; *Matter of Walworth* (1901), 66 App. Div. 171, 72 N. Y. Supp. 984. See, also, *Whitney et al., Exrs.,* v. *Tax Comm.* (1940), 309 U. S. 530, 84 L. Ed. 909.

Some authorities relied upon by the Tax Commissioner have indicated that the power of disposition over property until death *may* be sufficiently equivalent to property so as to justify imposition of a tax on the extinguishment of that power by death of the donee on the theory that something thereby passes from the one having such power. *Curry, Tax Commr.,* v. *McCanless, Commr.* (1939), 307 U. S. 357, 83 L. Ed. 1339; *Graves et al.,*

*Commrs.,* v. *Elliott* (1939), 307 U. S. 383, 83 L. Ed. 1356; *Bullen* v. *Wisconsin* (1916), 240 U. S. 625, 60 L. Ed. 830; *Pennsylvania Co. for Insurance on Lives* v. *Kelly, Tax Commr.* (1943), 134 N. J. Eq. 120, 34 A. 2d 538; *State, ex rel. Smith, Atty. Genl.,* v. *Probate Court, supra* (124 Minn. 508). It may be noted that in each of those cases, except the one from Minnesota, the creator and holder (*i. e.,* donor and donee) of the power was the same person. Furthermore, in each of those cases, including the Minnesota case, the power of disposition involved was such as to enable the holder thereof to vest title to the property subject thereto in himself or his estate. In such an instance, it is reasonably arguable that the extinguishment of the power by death of the holder or the donee thereof results in a passage of some interest in the property from such holder or donee. In the instant case, it is conceded that the donee of the power could not have given any interest in the property subject to the power (*i. e.,* the principal of the trust) to herself or her estate. Hence, no interest in the principal of the trust would pass from her on her exercise of that power or on her death without fully exercising it or without re-exercising it. The decisions of this court have recognized that an inheritance or succession tax can be levied under our statutes with respect to a succession to property only if some interest of the decedent in that property passes from the decedent. See *In re Estate of Kessler* (1964), 177 Ohio St. 136, 139 to 142, inclusive, 144, 203 N. E. 2d 221; *In re Estate of Evans* (1962), 173 Ohio St. 137, 140, 141, 180 N. E. 2d 827; and *Tax Commission* v. *Hutchison* (1929), 120 Ohio St. 361, 366, 368, 369, 166 N. E. 352. The Ohio succession "tax is * * * levied upon the succession [*i. e.,* "passing of property," Section 5731.01 (B), Revised Code] to any property [*i. e.,* "everything capable of ownership * * * which passes to any one person * * * from any one person." Section 5731.01 (A) Revised Code] passing * * * to or for the use of a person * * *." Section 5731.02, Revised Code.

The only authority which tends to support the Tax Commissioner's position in the instant case is *Colorado* v. *Cooke* (1962), 150 Colo. 52, 370 P. 2d 896.

This court is unable to agree with the decisive conclusion of the Colorado court in that case that there is no "distinction

between \* \* \* the nonexercise of a general power and \* \* \* the nonexercise of a special power." As hereinbefore pointed out, we are of the opinion there are substantial differences. For example, the donee of a special power of appointment over property, unlike the donee of a general power, has no power to appoint the property to himself or his estate. Therefore, unlike the donee of a general power, the donee of the special power has nothing which may reasonably be regarded as representing an interest of the donee in that property. Hence, no interest in the property passes from the donee thereof on the nonexercise of such a special power.

Furthermore, the Colorado court failed to recognize that the exercise of a power, requiring some aid from the law of the state where the donee of the power resides, furnishes a justification for a tax which is not present where the power can be exercised so as to transfer title to the appointed property without any help whatever from the law of that state. See *Matter of Lansing, supra* (182 N. Y. 238); *Walker, Admr., v. Treasurer and Receiver General, supra* (221 Mass. 600); and *Graves* v. *Schmidlapp et al., Exrs., supra* (315 U. S. 657). Where there is a nonexercise of a power created by a nonresident to appoint property outside the state, the law of the state where the donee resides contributes nothing to the passing of title that can provide any justification for an inheritance or succession tax on that passing.

Judge O'Neill's opinion seems to find in three United States Supreme Court cases the answers to questions which he states "are controlling in the disposition of this case." We believe that his opinion reads determinations and declarations of law into those three cases which simply cannot be extracted from them.

The first is *Central Hanover Bank & Trust Co.* v. *Kelly, Tax Commr.* (1943), 319 U. S. 94. In an effort to make the facts of that case fit the facts of this case, it is contended that the factual situation there was the same as in the instant case "with one exception." However, that exception is very important.

There, the owner of intangible property had set up a trust in a state other than his domicile under which the trust income

was to be paid to that owner for life with remainders over. That *owner* was *domiciled in* the *taxing state not only at* his *death but also at* the *time* the *trust* was *created.* The precise holding of the lower court that was affirmed was "that the *creation of* the * * * *remainders* * * * *was* a '*transfer*' * * * in contemplation of * * * death and intended to take effect in possession or enjoyment at or after * * * death; and that *it was that transfer* * * * *on which* the *tax* was *laid.*" (319 U. S. at 96.)

The *Kentucky intangibles in* the *instant case* were *owned by* Mr. *Laffoon, who was domiciled in Kentucky at all times and set up the trust in Kentucky.* Those *intangibles* were *never owned by any one domiciled in Ohio.*

As stated at the end of the opinion (319 U. S. 97, 98):

"The determination by the New Jersey courts of the kind of interest transferred and the time when it was effected is a matter of local law binding on us. * * * a state may * * * make the transfer *inter vivos* the taxable event and then measure the tax by the value of the property at time of death. * * * The significant facts are that the rights of the remaindermen *derived solely from* the trust *agreement* ["*made by* one of" the taxing state's "*domiciliaries*"] and that the grantor died domiciled in New Jersey [the taxing state]." (Emphasis added.)

Certainly, the rights of those who took under the power of appointment in the instant case were not "*derived solely from*" Mrs. Laffoon's *exercise of the power* of appointment. Those rights were primarily derived from the creation in Kentucky of the trust and of the power of appointment and from the conveyance of the Kentucky trust assets by Mr. Laffoon, who always lived in Kentucky, to the Kentucky trustees.

It should be noted also that the *Kelly case* did not even involve any power of appointment.

*Graves* v. *Schmidlapp et al., Exrs.* (1942), 315 U. S. 657, did *not* decide, as apparently contended, that "for succession tax purposes * * * the donee of a power of appointment" *always* stands "in the same position as the original owner of intangible personal property." If it did, the court would not have stated (315 U. S. at 662 and 663):

"'* * * it is the *exercise of* the *power* to dispose of the intangibles which *is* the *taxable event* * * *.

"'* * *

"Whether the New York tax statute would apply *if* the *New York will* were *ineffective to transfer* the intangibles because it failed to comply with the requirements of the Massachusetts will or statutes, is for the New York courts to decide. *Whether* in such a case the *statute could be constitutionally* so *applied* is a question *not presented by the record.* But if, as is assumed, the power has been effectively exercised, the *New York will* is the implement of its exercise, *made effective as a will by New York law* whose aid the decedent *invoked* for the exercise and enjoyment of the property right conferred on him by the Massachusetts will. *Its exercise is a subject over which the* sovereign *power of taxation extends.''* (Emphasis added.)

In the instant case, the *transfer sought to be taxed* is *dependent for* its *effect upon no Ohio will or other* Ohio *instrument* or *upon no Ohio law* whatever *or upon no other privilege that Ohio confers.* The *power* was *exercised,* and could only be exercised, *by delivery of* an *instrument in Kentucky to* the *Kentucky trustees.* It *could not even have been exercised by* an *Ohio will.*

Also, the case of *Wachovia Bank & Trust Co.* v. *Doughton,* 272 U. S. 567, overruled in the *Graves case,* dealt only with (315 U. S. 664) "power of a state to tax the *effective exercise of a testamentary power.''* We are not confronted with any such question in the instant case.

We fail to see what relevance *Whitney et al., Exrs.,* v. *State Tax Commission* (1940), 309 U. S. 530, has in the instant case. There, the donor and donee of the power were both at all times domiciled in New York, and the property subject to the power was New York property. The holding was that the exercise of the power by a New York will was taxable in the estate of the donee.

As hereinbefore pointed out, Massachusetts had decided in 1911 that such an exercise of a power of appointment or even its nonexercise (which New York has never sought to tax since amendment of its statutes to conform with the holding in *Matter of Lansing, supra* [182 N. Y. 238]) was taxable under a statute almost identical to Section 5731.02 (D) even where such statute was enacted after creation of the power, if both the donor and the donee of the power were residents of the taxing state at the

time of their death. *Minot* v. *Treasurer and Receiver General, supra* (207 Mass. 588). That decision was rendered four years before *Walker, Admr.,* v. *Treasurer & Receiver General, supra* (221 Mass. 600), which latter decision was rendered four years before this state adopted what is now Section 5731.02 (D) from the statutes of Massachusetts. See Opinions of Attorney General (1922), 536, No. 3237.

In our opinion, none of the subsequent decisions of the Supreme Court of the United States are such as to persuade this court to abandon the settled interpretation of Section 5731.02 (D) made by the highest court of Massachusetts in the *Walker* case four years before this state adopted that statute from Massachusetts.

*Judgment affirmed.*

SILBERT and BROWN, JJ., concur.
HERBERT, J., concurs in the syllabus and judgment.
ZIMMERMAN, MATTHIAS and O'NEILL, JJ., dissent.

SILBERT, J., of the Eighth Appellate District, sitting for SCHNEIDER, J.

HERBERT, J., concurring. I concur in the syllabus and in the judgment of the court, believing that when a legislature adopts the words of a statute of another state it also adopts "the law" of such statute. Thus, when the Ohio General Assembly borrowed the predecessor of Section 5731.02 (D), Revised Code, from Massachusetts, it also adopted the limitation imposed by *Walker* v. *Treasurer and Receiver General* (1915), 221 Mass. 600, that the statute does not apply to cases where the property is not within the taxing state and where the transfer may be accomplished without reference to the law of the taxing state. Therefore, Section 5731.02 (D), Revised Code, is not *intended* to apply to the instant case. Since this is so, I find the remainder of the majority opinion unnecessary to the disposition of this case, for no one contends that the *Walker* limitation is itself unconstitutional. It may have resulted from an erroneous fear of unconstitutionality, as the dissent labors to point out, but that is not relevant. The *Walker* limitation, even if the product of an erroneous viewpoint, is part of the legislative intent of the statute.

O'NEILL, J., dissenting. In the instant case, Polk Laffoon, a nonresident of Ohio, placed intangibles in trust in the custody of a nonresident trustee and by the trust instrument granted to Emily Woodall Laffoon, his wife, the power to make disposition of the income and principal of this trust estate, in the following language:

"Donor grants to his wife, Emily Woodall Laffoon, the power to modify this trust *at any time* * * * to change the proportions, amounts and times of payment to the beneficiaries named above or their issue * * *." (Emphasis added.)

Pursuant to this power, Mrs. Laffoon, while domiciled in Ohio, exercised her donated power of appointment and amended the original trust instrument to creat a new and completely different plan for the distribution of both income and principal of the trust from that provided in the original trust instrument. She directed the trustee in the following language:

" * * * to retain the principal of said trust fund during my lifetime and to pay to me, Emily Woodall Laffoon, wife of the donor, the income arising therefrom so long as I shall live but I hereby annul and make void the provisions contained in said trust agreement and in my said modification of July 28, 1941, relating to the distribution of said trust fund upon my death. In lieu of said provisions, I hereby direct that said trustee on my death hold, administer and/or distribute said trust fund in accordance with the following provisions:

"I. (A) If my son, Polk Laffoon III, survive me, the trustee shall convey, transfer and pay over to him, free and clear of trust, four-fifths (4/5ths) of the trust fund.
" * * *

"II. (A) If both of the children of my daughter, Emily Brent Laffoon Randolph, deceased, survive me and shall have attained the age of twenty-five (25) years at the time of my death * * * the trustee shall convey, transfer and pay over, free and clear of trust, the remaining one-fifth (1/5th) of the trust fund to the children of my said daughter, in equal shares * * *."

Mrs. Laffoon died domiciled in Cincinnati, Ohio. Her estate was administered in Hamilton County, Ohio. Her son survived her, domiciled in Cincinnati, Ohio. The two children of her deceased daughter survived her; one was domiciled in Cincinnati, Ohio, the other was domiciled outside Ohio. Under the

modification of the original trust instrument executed by Mrs. Laffoon, the son was entitled to receive four-fifths of the trust estate and the children one-tenth each. It is agreed that the exercise of the power of appointment by Mrs. Laffoon was effective in transferring title to the intangibles in this trust from the trustee to the beneficiaries.

The pertinent statutory law appears in Sections 5731.01 and 5731.02, Revised Code, which provide:

Section 5731.01. "As used in Sections 5731.01 to 5731.56, inclusive, of the Revised Code:

"(A) 'Estate' and *'property'* include everything capable of ownership, or any interest therein or income therefrom, whether *tangible* or *intangible,* and, except as to real estate, *whether within or without this state,* which passes to any one person * * * from any one person whether by a single succession or not." (Emphasis added.)

Section 5731.02. "A tax is hereby levied upon the succession to *any property passing, in trust or otherwise, to or for the use of a person* * * * in the following cases:
"* * *

"(D) *Whenever any person or corporation exercises a power of appointment derived from any disposition of property, such appointment when made shall be deemed a succession taxable under this section in the same manner as if the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by said donee by will* * * *;
"* * *

"Such tax shall be upon the excess of the actual market value of such property over the exemptions made and at the rates prescribed in Sections 5731.01 to 5731.56, inclusive, of the Revised Code." (Emphasis added.)

It is clear that the literal language of Section 5731.02, Revised Code, makes the succession of intangibles, which took place in the instant case, taxable. The statutory language is unambiguous and explicit.

The majority opinion makes no contention that the statute does not literally provide for taxing this succession.

There is no provision of the Ohio Constitution which denies the state the power to apply the provisions of this statute and

levy and collect the tax upon the succession in this case. The majority does not contend that there is such a provision.

The majority opinion takes the position that the state of Ohio has no power to apply and enforce the provisions of this taxing statute with regard to this succession.

It is most interesting to note that nowhere in the majority opinion is there a statement, a reference or even a hint as to *what provision of law denies Ohio the power to tax this succession.*

An examination of the cases cited in the majority opinion and a reading of the other cases in this area of the law discloses that the only provision of law discussed in those cases as having the possibility of denying to Ohio the power to tax this succession is the due-process clause of the Fourteenth Amendment of the United States Constitution.

This is, of course, a federal question. The pronouncements of the Supreme Court of the United States are the controlling law upon the question of whether the due-process clause of the Fourteenth Amendment denies Ohio the power to tax in the instant case.

The three questions which are controlling in the disposition of this case have been decided by the Supreme Court of the United States. The questions are:

First: Where a resident of a state, who owns intangible personal property which he has always kept in another state, places those intangibles in an irrevocable trust and relinquishes all control over those intangibles to a nonresident trustee, which trust instrument provides that the trustee is to pay the owner an income for life and upon his death the principal of the trust estate is to be distributed one-half to each of his two children, both of whom are nonresidents of the domiciliary state, and where the trust instrument provides that it is to be construed and enforced under the laws of the state in which it was made, and when such owner dies and his estate is administered in the state in which he is domiciled, which was also his domicile at the time he established the trust, does the domiciliary state of the original owner of the intangibles have the power to levy an inheritance tax upon the transfer of this intangible property and measure the amount of the tax by the market value of the intangibles at the time of death of the original owner?

The answer to this question is: The state does have this power.

This precise question was decided by the Supreme Court of the United States in *Central Hanover Bank & Trust Co. v. Kelly, Tax Commr.* (1943), 319 U. S. 94, 98.

It should be noted here that the factual situation in the *Hanover case, supra,* is the same as the factual situation in the case before this court, with one exception. In this case, Mrs. Laffoon, by reason of a power of appointment, dictated the terms of the trust which made disposition of the property at her death, while in the *Hanover case, supra,* the original owner of the intangibles dictated the terms of the trust which made disposition of the property at his death. In each case, the person dictating the disposition of the trust estate at death directed that the intangibles should be retained by the trustee during his life and the income paid to him until his death.

The second question, and the central one in this case, is: For succession tax purposes, does the donee of a power of appointment stand in the same position as the original owner of intangible personal property?

The answer to this question is: Yes.

This precise question was decided by the Supreme Court of the United States in *Graves v. Schmidlapp et al., Exrs.* (1942), 315 U. S. 657, 660.

The third question which is presented by this case is: Does the fact that in this case Mrs. Laffoon had the power to appoint income from the trust estate to herself but did not have the power to appoint any of the principal of the trust estate to herself or to her estate deny the state the power to impose a succession tax upon the transfer of property?

The answer to this question is: No.

This precise question was decided by the Supreme Court of the United States in *Whitney et al., Exrs., v. State Tax Commission* (1940), 309 U. S. 530.

The answers to these three questions are dispositive of this case, and the law established by the Supreme Court of the United States in deciding these questions is controlling.

The controlling rule of law is stated in 85 Corpus Juris Secundum 860, 861, Taxation, Section 1117, paragraph c.

The most recent case to consider the question presented

108

by the instant case was *Colorado* v. *Cooke* (1962), 150 Colo. 52, 370 P. 2d 896.

The Colorado court followed the law as announced by the Supreme Court of the United States in the cases cited above and held that the state had the power to impose a succession tax. The Colorado court stated the rule as follows: A general or specific power of appointment exercised is a proper foundation upon which to impose a succession tax, even though the intangible assets are located in a state other than that where the person possessing the power of appoinment is domiciled.

The majority opinion criticizes the *Colorado case*, but upon analysis the criticism amounts to a disagreement with the pronouncements of law which have been made by the Supreme Court of the United States: *Whitney* v. *Tax Commission* (1940), *supra*; *Graves* v. *Schmidlapp* (1942), *supra*; and *Central Hanover Bank & Trust Co.* v. *Kelly* (1943), *supra*.

The conclusions made in the majority opinion, that where all paper evidences of the intangibles are located outside the taxing state, and where no incident whatever of the transfer of the title to such property is in any way dependent for its effect upon the law of the taxing state, and that to permit such a tax would be to give extraterritorial effect to the state's taxing statutes, were all present in the *Hanover case, supra*, in which case the court held that they were not sufficient to deny the domiciliary state the power to tax.

The argument that the property was owned by a nonresident donor of the power of appointment was made in the case of *Graves* v. *Schmidlapp, supra*, and the court held that, for inheritance tax purposes, the donee of the power of appointment to dispose of intangible personal property stands on the same footing as the owner, and, for the purpose of inheritance tax, the power to dispose of property at death is the equivalent of ownership. The court's exact and pointed language, at page 660, was as follows:

"*For purposes of estate and inheritance taxation, the power to dispose of property at death is the equivalent of ownership. * * * Intangibles, which are legal relationships between persons and which in fact have no geographical location*, are so associated with the owner that they and their transfer at death are taxable at the place of his domicile, where his person and the

exercise of his property rights are subject to the control of the sovereign power. *His transfer of interests in intangibles, by virtue of the exercise of a donated power instead of that derived from ownership, stands on the same footing. In both cases the sovereign's control over his person and estate at the place of his domicile, and his duty to contribute to the financial support of the government there, afford adequate constitutional basis for the imposition of a tax. * * *"* (Emphasis added.)

It was argued in the *Hanover case, supra*, that the transfer of the intangibles took place at the time of the execution of the trust and the delivery of the intangibles to the trustee, and that the trustee was then the owner, and, therefore, the tax could not be levied upon the transfer of the property from the trustee to the remaindermen and measured by the value of that property at the time of death of the original owner.

This is the same argument that the majority opinion makes that no incident of the transfer of title is in any way dependent for effect upon the law of the taxing state. The majority opinion concludes in this case that to do so would give extra-territorial effect to the taxing statute which is to be implied against.

The court dismissed these arguments as immaterial in the *Hanover case, supra*, in the following language:

"The execution of the present trust agreement in New York, the circumstance that the remaindermen as well as the trustee were nonresidents of the taxing state are quite immaterial. *Domicile is the single controlling consideration in this situation, as it is in the case of the taxation of income derived from activities outside the state. * * *

"* * *

"* * * And if the transfer to the sons is assumed to have taken place only at the time of the grantor's death, there is no constitutional reason why the result need be different. The fact that he did not then 'own' the property is inconsequential. * * * The significant facts are that the rights of the remaindermen derived solely from the trust agreement and that the grantor died domiciled in New Jersey." (Emphasis added.)

In the instant case, the rights of the son to four-fifths of the trust estate and the two children of the deceased daughter to one-tenth each of the trust estate derived solely from the

amendment of the trust instrument made by Mrs. Laffoon pursuant to the exercise of her power of appointment. She was domiciled in Ohio at the time she executed the amendment to the trust and she was domiciled in Ohio at the time of her death, and her estate was administered in Ohio. As the court said in the *Hanover case, supra,* at page 97, "domicile is the single controlling consideration in this situation."

In the *Whitney case, supra,* Cornelius Vanderbilt established a trust and in the trust agreement gave to his wife an income for life and the power of appointment to make disposition of the principal of the trust estate at her death. She exercised this power, and the question arose in that case as to whether the state had the power to levy an inheritance tax upon the value of the property which was transferred by the exercise of her power of appointment effective at her death since she had no power to appoint any of the principal to herself or to her estate and, thus, it was argued, she never received any "beneficial interest" from the principal of this trust estate and, thus, the title did not pass from her to the remaindermen, but from the original donor of the power to the remaindermen, and the state had no power to tax this transfer and measure it by the value of the property at the time of her death. Justice Frankfurter, in upholding the power of the state to levy the tax, said, at page 538:

"* * * Mrs. Vanderbilt, to be sure, had, in the conventional use of that term, no 'beneficial interest' in the property which she transferred through the exercise of her power of appointment. She could not, that is to say, use the corpus of the trust herself or appoint it to her estate; nor could she have applied it to her creditors. These qualifications upon Mrs. Vanderbilt's power over the appointive property had a significance during her lifetime which death transmuted. For when the end comes, the power that property gives, no matter how absolutely it may have been held, also comes to an end—except in so far as the power to determine its succession and enjoyment may be projected beyond the grave. *But the exercise of this power is precisely the privilege which the state confers and upon which it seizes for the imposition of a tax. It is not the decedent's enjoyment of the property—the 'beneficial interest'—which is the occasion for the tax, nor even the acquisition of such enjoyment*

*by the individual beneficiaries.* Presumably the policy behind estate tax legislation like that of New York is the diversion to the purposes of the community of a portion of the total current of wealth released by death.

"In making this diversion, the state is not confined to that kind of wealth which was, in colloquial language, 'owned' by a decedent before death, nor even to that over which he had an unrestricted power of testamentary disposition. It is enough that one person acquires economic interests in property through the death of another person, even though such acquisition is in part the automatic consequence of death or *related to the decedent merely because of his power to designate to whom and in what proportions among a restricted* class the benefits shall fall." (Emphasis added.)

The majority opinion relies upon the case of *Walker, Admr.,* v. *Treasurer and Receiver General* (1915), 221 Mass. 600, 109 N. E. 647, which is an early case in this field, decided a few years after a statute similar to Ohio's was enacted in Massachusetts. The reasoning in that case was that title to property transferred by the exercise of a power of appointment by the donee of that power passed from the donor of the power rather than the donee, and that the donor of the power was the owner of the property, and, therefore, an attempt by a state, which was the domicile of the donee, to tax the transfer of the property was, when the donor was a nonresident of that state, a tax upon the transfer of the donor's property and gave an extraterritorial effect to the statute which was not permissible.

This reasoning was accepted by the United States Supreme Court in the case of *Wachovia Bank & Trust Co., Admr.,* v. *Doughton, Commissioner of Revenue* (1926), 272 U. S. 567, 71 L. Ed. 567, 47 S. Ct. 202, and was the law until the case of *Graves* v. *Schmidlapp, supra,* where this reasoning was rejected, and the *Wachovia case, supra,* which embodied this reasoning, was specifically overruled by name.

Under the facts of the instant case, under the Ohio statute, the correct rule of law, as evolved from a series of cases decided by the Supreme Court of the United States in the field of inheritance tax law, is as follows:

For the purposes of inheritance and estate taxation of intangible personal property, a donee of a special power to make

disposition of such property stands on the same footing as the owner of the property and when such donee exercises that power and makes the transfer of that intangible property effective upon his death, the state which was his domicile at the time he exercised the power of appointment and which was his domicile at the time of his death has the power to levy an inheritance tax upon the transfer of the intangibles pursuant to his direction and measure the amount of such tax by the value, at the time of his death, of the intangible property transferred.

The majority opinion in this case is a classic example of the court permitting its own determination of what the law ought to be to override what the Legislature has explicitly enacted the law to be and what the highest court of the land has declared the law to be.

The judgment should be reversed, and the cause remanded to the Probate Court of Hamilton County for a proper determination of the amount of the tax.

ZIMMERMAN and MATTHIAS, JJ., concur in the foregoing dissenting opinion.