[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 671.]

HAUSMAN ET AL., APPELLEES AND CROSS-APPELLANTS; BANCOHIO NATIONAL
BANK, APPELLEE AND CROSS-APPELLEE, *v*. CITY OF DAYTON, APPELLANT AND
CROSS-APPELLEE.

[Cite as *Hausman v. Dayton*, 1995-Ohio-277.]

*Real property—Effect of default by mortgagor on legal title—Right of redemption
is the mortgagor's right to take prescribed action to satisfy a debt secured
by a mortgage and therefore cannot be construed as a "setoff,"*

1. After a mortgagor defaults, legal title passes to the mortgagee only as between
the mortgagor and the mortgagee. As to the rest of the world, title remains
in the mortgagor until the mortgagee forecloses on the mortgage and the
sale is consummated, the mortgagee recovers possession of the property by
ejectment proceedings, or the mortgagee otherwise extinguishes the right of
the mortgagor to redeem. (*Levin v. Carney* [1954], 161 Ohio St. 513, 53
O.O. 390, 120 N.E.2d 92, followed.)

2. The right of redemption is not a debt owed to the mortgagor by the mortgagee,
but rather is a mortgagor's right to take prescribed action to satisfy a debt
secured by a mortgage. Therefore, the right of redemption cannot be
construed as a "setoff."

(No. 94-349—Submitted May 23, 1995—Decided September 13, 1995.)

APPEAL AND CROSS-APPEAL from the Court of Appeals for Montgomery County,
No. 13647.

———————————

{¶ 1} This case arises from a dispute over who is liable to abate a nuisance
at the site of the former Dayton Tire & Rubber Company (the "property"). In July
1981, Firestone Tire & Rubber Company sold the property to appellee J. V.
Properties, an Ohio general partnership owned by appellee Harry G. Hausman and

Jack McCarthy. J. V. Properties later sold an undivided ten percent interest in the property to Bertram S. Green. Hausman and McCarthy were also the principal shareholders in Machinery Merchants International ("MMI"), an Ohio corporation in the business of salvaging the machinery and equipment remaining at the abandoned Dayton Tire & Rubber Company property.

{¶ 2} In February 1984, MMI granted appellee BancOhio National Bank ("BancOhio") a security interest in all personal and other property, including all the machinery and equipment located at the property, to secure its debt to BancOhio. MMI eventually defaulted on its obligation to BancOhio.

{¶ 3} On April 25, 1984, BancOhio, J. V. Properties and MMI entered into an agreement stipulating that MMI was in default of its obligations to BancOhio, that BancOhio had demanded full payment from MMI, and that the entire amount was due. Pursuant to the agreement, J. V. Properties took possession of MMI's assets located at the property as bailee for BancOhio and acted as BancOhio's commissioned sales agent with respect to the personalty. The agreement also required J. V. Properties to execute a mortgage to BancOhio of J. V. Properties' undivided ninety percent interest in the property. The mortgage was executed on June 11, 1984.

{¶ 4} On June 25, 1985, BancOhio entered into a final agreement with MMI and J. V. Properties, and with Hausman and McCarthy individually, wherein all the parties agreed that the mortgage on the property was in default and that foreclosure by BancOhio was the proper legal remedy. In addition to acknowledging MMI's default, J. V. Properties and MMI agreed "not to assert any defenses or set-offs in opposition to any foreclosure proceeding BancOhio may institute ***."

{¶ 5} In December 1985, BancOhio filed a foreclosure action on the mortgage it held on J. V. Properties' undivided ninety percent interest in the property and was subsequently awarded an Amended Judgment Decree in Foreclosure in which the court found that BancOhio's mortgage was a valid and

2

subsisting first and best lien on that interest. The court ordered foreclosure on the mortgage and lien and declared that J. V. Properties' equity of redemption would be barred unless it paid the amount due BancOhio plus the cost of the action within three days after the entry of the judgment decree.

{¶ 6} In December 1986, BancOhio exercised its right to have the ninety percent interest in the property offered for sale. There were no bidders at the sheriff's sale, however, and the property was never sold. During this time, the property was subjected to looting, vandalism and arson. Moreover, an environment inspection in 1987 revealed that the property was contaminated with PCBs and friable asbestos. The deteriorating condition of the property, as well as the environmental and safety concerns, led the appellant city of Dayton ("Dayton") to declare the property a public nuisance pursuant to Dayton's Revised Code of General Ordinances (R.C.G.O.) Sections 152.01 *et seq*. The city's Superintendent of Inspectional Services sent written notices of the nuisance declaration and orders to abate the nuisance to the titleholders of record to the property—J. V. Properties, Hausman, McCarthy and Green. After two hearings before the city's Nuisance Appeals Board ("board") regarding the nuisance determination, the city served a nuisance order on BancOhio's out-of-house counsel. BancOhio subsequently requested a hearing before the board.

{¶ 7} In May 1991, the board conducted a hearing and concluded that the property was a public nuisance. The board also ruled on the merits of the appeal and found that pursuant to R.C.G.O. 152.01, J. V. Properties, Harry Hausman, Jack McCarthy, Bertram Green, and BancOhio were all owners of the property and were liable for the costs of abating the nuisance.

{¶ 8} The parties appealed the decision of the board, and BancOhio and Green filed declaratory judgment actions arguing that R.C.G.O. 152.01 was unconstitutional as applied to mortgagees. In response to the declaratory judgment

actions, several cross-claims and counterclaims for indemnification and contribution were filed. The various cases were consolidated.

{¶ 9} The trial court affirmed the decision of the board as to Green and BancOhio, finding that when J. V. Properties defaulted on the mortgage, BancOhio became titleholder to the ninety percent interest in the property. Reasoning that J. V. Properties and Hausman no longer held legal or equitable title, the trial court found that they were not "owners" and reversed the decision of the board as to them. The court also concluded that the ordinance would be unconstitutionally broad in defining "owners" so as to include mortgagees. In order to preserve the constitutionality of the R.C.G.O. 152.01, the court construed the ordinance to read "mortgagee in possession" and, consequently, found BancOhio to be an "owner" of the property.

{¶ 10} The trial court entered its final judgment on the administrative appeals and on the declaratory actions. Although it did not address the cross-claims and counterclaims for indemnification and contribution asserted in the declaratory actions, the court found that there was "no just reason for delay in the matters already decided."

{¶ 11} BancOhio appealed, arguing that J. V. Properties and Hausman were the actual titleholders and that it was nothing more than a mortgagee. Dayton cross-appealed, arguing that the trial court erred in entering final judgment in the administrative appeals and in certifying its decision in the declaratory actions pursuant to Civ. R. 54(B). Dayton also argued that J. V. Properties and Hausman could be liable as "owners" even though they defaulted on the loan.

{¶ 12} The court of appeals agreed with the trial court that the ordinance could not validly apply to mortgages. It reversed the trial court, however, on its finding that through the mortgage default BancOhio became in substance the titleholder to the property. The court of appeals also reversed and remanded the trial court's determination that BancOhio was a "mortgagee in possession" because

the court believed that finding must be made in an evidentiary hearing by the trial court or the board. The court of appeals rejected Dayton's argument that the issues in the consolidated case were improperly appealed, but adopted Dayton's argument and held that J. V. Properties and Hausman could be liable as "owners." Dayton appealed the judgment to this court.

{¶ 13} This cause is now before this court upon the allowance of a discretionary appeal and cross-appeal.

––––––––––––––––––

*Cole Co., L.P.A., Leland D. Cole* and *Mark H. Ludwig*, for appellees and cross-appellants, Harry G. Hausman et al.

*Vorys, Sater, Seymour & Pease, Joseph D. Lonardo* and *Martyn T. Brodnik*, for appellee and cross-appellee, BancOhio National Bank.

*J. Anthony Sawyer*, Director of Law, and *Steven R. Milby*, Senior Attorney, for appellant and cross-appellee, city of Dayton.

*Thompson, Hine & Flory, Douglas O. Cooper, Kenton L. Kuehnle* and *Margaret R. Carmany,* urging affirmance for *amici curiae,* Ohio Mortgage Bankers Association, Ohio Bankers Association and Ohio League of Financial Institutions.

––––––––––––––––––

**MOYER, C.J.**

{¶ 14} In this case, we are asked to determine whether, pursuant to R.C.G.O. 152.01, BancOhio is an "owner" of the property at issue and liable for nuisance abatement..

{¶ 15} Dayton's nuisance ordinance R.C.G.O. 152.01 defines "owner" as including: "The owner(s) of record of the premises of fee or lesser estate therein, a mortgagee, vendee in possession, land contract purchaser, assignee of rents, receiver, executor, administrator, trustee, or lessee, as determined by an examination of the public records of Montgomery County, Ohio, or any other person, firm, or corporation in control of a building, or their duly authorized

agents." Dayton contends that BancOhio is an "owner" under the ordinance as a titleholder, or in the alternative, as a mortgagee. BancOhio argues that it is not a titleholder and that it may not constitutionally be held liable as a mortgagee. We will first discuss the possibility of BancOhio being a titleholder.

I

{¶ 16} The trial court found BancOhio liable as a titleholder by relying on the Montgomery County Court of Appeals' decision in *Hembree v. Mid-America Fed. S. & L. Assn.* (1989), 64 Ohio App.3d 144, 580 N.E.2d 1103. The court read *Hembree* as standing for the proposition that title to mortgaged property transfers automatically from a mortgagor to a mortgagee upon default of a condition of the mortgage. This reliance was misplaced, however, and ignored over one hundred years of precedent established by this court.

{¶ 17} In *Martin v. Alter* (1884), 42 Ohio St. 94, 98, this court held, "[i]n the case of a mortgage in the usual form, the legal estate remains in the mortgagor in possession, even after condition broken as to all the world, except the mortgagee. *** The latter may maintain ejectment or take other legal steps to obtain possession after condition broken, *but until he does so, the mortgagor is at law the owner of the fee*." (Emphasis added.)

{¶ 18} This court revisited the issue of ownership and how it relates to mortgages in *Levin v. Carney* (1954), 161 Ohio St. 513, 53 O.O. 390, 120 N.E.2d 92. We stated that "[i]n order to determine the question of ownership it would appear that the following principles may be deduced ***:

"1. A mortgage of real property in the usual form is a security for a debt, or for the performance of some other condition.

"2. The legal and equitable title to mortgaged real estate remains in the mortgagor so long as the condition of the mortgage remains unbroken.

"3. After condition broken, the legal title as between the mortgagee and the mortgagor is vested in the mortgagee, subject to the equity of redemption.

"4. Ordinarily, where the relation of mortgagor and mortgagee exists, a mortgagor in possession has not only the right of possession, but this right continues after condition broken until the period of redemption expires or until the mortgagee lawfully gains possession.

"5. Generally a mortgagee in possession of mortgaged real estate, by sufferance or consent, during the period that the right to redeem exists, is a trustee for the mortgagor and those claiming under him." *Id.* at 520, 53 O.O. at 393, 120 N.E.2d at 97.

{¶ 19} In view of these principles, the *Levin* court held that "until a mortgage is foreclosed and a sale consummated, or until a mortgagee obtains possession by ejectment proceedings, the fee to mortgaged real estate *** remains in the mortgagor." *Id.* Thus, after a mortgagor defaults, legal title passes to the mortgagee only as between the mortgagor and the mortgagee. As to the rest of the world, title remains in the mortgagor until the mortgagee forecloses on the mortgage and the sale is consummated, the mortgagee recovers possession of the property by ejectment proceedings, or the mortgagee otherwise extinguishes the right of the mortgagor to redeem. *Id.* at paragraph three of the syllabus.

{¶ 20} In the instant case, BancOhio did foreclose on the mortgage following J. V. Properties' default in payment. However, there were no bids on the property at the sheriff's sale, and thus the sale of the property was never consummated. Moreover, there is no evidence that BancOhio has sued in ejectment to obtain possession of the property. Therefore, BancOhio can be held to be the titleholder of the property only if it otherwise extinguished J. V. Properties' right of redemption.

{¶ 21} In Ohio, a mortgagor's right to redeem is "absolute and may be validly exercised at any time prior to the confirmation of sale." *Women's Fed. Sav. Bank v. Pappadakes* (1988), 38 Ohio St. 3d 143, 146, 527 N.E.2d 792, 795. This right is dual in nature, arising both from equity and statute. The mortgagor's

"equity of redemption" is typically cut off once a mortgagee seeks and is granted a decree of foreclosure.  Generally, a common pleas court grants the mortgagor a three-day grace period to exercise the "equity of redemption," which consists of paying the debt, interest and court costs, to prevent the sale of the property.  See Hausser & Van Aken, Ohio Real Estate Law and Practice (1993) 744, Section 53.01(D).

{¶ 22} A mortgagor's statutory right of redemption emanates from R.C. 2329.33, which provides:

"In sales of real estate on execution or order of sale, *at any time before the confirmation thereof*, the debtor may redeem it from sale by depositing *** the amount of the judgment or decree upon which such lands were sold, with all costs ***.  The court of common pleas thereupon shall make an order setting aside such sale ***."  (Emphasis added.)

{¶ 23} In the case at bar, the trial court that granted BancOhio a foreclosure decree on the property also gave J. V. Properties the standard three days to exercise its equity of redemption.  Obviously, J. V. Properties failed to exercise its equity of redemption, and this part of the right to redeem was therefore cut off.  What still remains, however, is J. V. Properties' right to redeem under R.C. 2329.33.

{¶ 24} Both Dayton and Hausman argue that pursuant to the June 25, 1985 agreement, J. V. Properties waived its statutory right of redemption.  Specifically, the third paragraph of the agreement stipulates the following:

"(c)   J-V [J. V. Properties] and MMI agree that, due to the default described above, there exists no defense in law or equity, or set-off which could defeat the institution and prosecution to completion and sale of a foreclosure proceeding by BancOhio.

"(d)   Notwithstanding paragraph 2(c) [sic, 3(c)] of this Agreement, J-V and MMI agree not to assert any defenses or set-offs in opposition to any

foreclosure proceeding BancOhio may institute by virtue of the default of J-V under the Dayton Mortgage."

{¶ 25} Dayton and Hausman contend that through the agreement BancOhio effectively extinguished J .V. Properties' right of redemption in that the term "set-off" includes the right to redeem. It is true that a mortgagor may waive the right of redemption after the mortgage agreement is entered, provided the agreement is equitable and supported by adequate consideration. *Shaw v. Walbridge* (1878), 33 Ohio St.1, paragraph two of the syllabus. We agree with the court of appeals, however, that "the June 25, 1985, agreement was insufficient to waive J.V. Properties' right to redeem the property. *** The right to redeem is not a *defense* to a foreclosure proceeding or a sale, but rather is an action that must be brought by the mortgagor. [Citation omitted.] It also obviously is not a set-off." (Emphasis *sic*.)

{¶ 26} Although the court of appeals does not provide any reasoning for the conclusion that the right of redemption is not a setoff, its conclusion is correct. A "setoff" is an adjustment between two parties, each with a specific debt to the other, that reduces or extinguishes the amount owed to the other. The right of redemption is not a debt owed to the mortgagor by the mortgagee, but rather is a mortgagor's right to take prescribed action to satisfy a debt secured by a mortgage. Therefore, the right of redemption cannot be construed as a setoff, and by waiving its right to exert a setoff, J. V. Properties did not extinguish its right to redeem under R.C. 2329.33. Consequently, BancOhio did not obtain title to the property.

II

{¶ 27} We next examine whether BancOhio can be found liable as a mortgagee.

{¶ 28} Under a plain reading of the Dayton nuisance ordinance R.C.G.O. 152.01, a mortgagee may be held liable for abating nuisances occurring on the mortgaged property. The reviewing courts below in effect concluded that such a

construction would violate Section 3, Article XVIII of the Ohio Constitution as an overbroad exercise of the city's police powers.[1]  Although this provision—commonly referred to as the Home Rule Amendment—endows a high measure of sovereignty to municipalities, in order to be a valid exercise of the city's police power, the ordinance "must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation."  *Teegardin v. Foley* (1957), 166 Ohio St. 449, 2 O.O.2d 462, 143 N.E.2d 824, paragraph one of the syllabus. Essentially, to avoid violating due process, legislative action must bear a real and substantial relation to public health and welfare, and not be unreasonable or arbitrary.  *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717.

**{¶ 29}** It is true that when interpreting an ordinance this court will, where possible, give the ordinance "such construction as will permit it to operate lawfully and constitutionally."  *Schneider v. Laffoon* (1965), 4 Ohio St.2d 89, 97, 33 O.O.2d 468, 472, 212 N.E.2d 801, 806.  We disagree, however, with the courts below that in order to preserve the constitutionality of the ordinance, it is reasonable to construe the ordinance as applying to mortgagees in possession rather than to mortgagees *not* in possession, as the ordinance clearly specifies.  The ordinance could have very easily defined "owner" to include a "mortgagee in possession."  In fact, as originally enacted on March 9, 1966, the predecessor ordinance R.C.G.O. 152.01 defined "owner" as an "owner of record of the premises in fee or lesser

---

1. Section 3, Article XVIII reads:
    "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

estate therein, *a mortgagee or vendee in possession*, assignee of the rents, receiver, executor, administrator, trustee, lessee, or other person, firm or corporation in control of a building, or their duly authorized agents. Any such person thus representing the owner shall be bound to comply with the provisions of this ordinance to the same extent as if he were the owner."[2] (Emphasis added.) When the ordinance was amended in 1980, however, "a mortgagee or vendee in possession, \*\*\*" was changed to read "a mortgagee, vendee in possession, \*\*\*." We do not view the rewriting of the ordinance to be a meaningless change. Rather, we believe that it was the clear intent of Dayton City Commission to substitute "mortgagee" for a mortgagee in possession.

{¶ 30} As identified previously, a mortgage of real property is a security for a debt and gives the mortgagee no right of possession or control. *Levin*, *supra*, at 520, 53 O.O. at 393, 120 N.E.2d at 97. A mortgagee, then, has no ability to create or prevent a nuisance from arising on the mortgaged property, and to hold such a mortgagee liable for abatement would be arbitrary and thus unconstitutional.

{¶ 31} In order for the ordinance to remain valid, the unconstitutional reference to "a mortgagee" must be capable of being severed from the ordinance. Severance of the offensive term is permissible where its removal "will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523, 644 N.E. 2d 369, 377, citing *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33. Applying this test, we hold that "a mortgagee" is sufficiently independent from the other entities listed in R.C.G.O 152.01 so that its severance leaves the remaining portion of the ordinance capable of standing on its own. Thus, BancOhio

---

2. Although the original version of R.C.G.O. 152.01 is not provided in the record, and only appears in BancOhio's merit brief to this court, the language of the predecessor ordinance is uncontested by any of the parties involved in this case.

cannot be held liable to abate the nuisance on the property pursuant to R.C.G.O 152.01 as a mortgagee.

{¶ 32} Therefore, we affirm in part and reverse in part the judgment of the court of appeals.

*Judgment affirmed in part*

*and reversed in part.*

DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER AND COOK, JJ., CONCUR.

————————————