HAUSMAN ET AL., APPELLEES AND CROSS-APPELLANTS; BANCOHIO NATIONAL BANK, APPELLEE AND CROSS-APPELLEE, *v.* CITY OF DAYTON, APPELLANT AND CROSS-APPELLEE.

[Cite as *Hausman v. Dayton* (1995), 73 Ohio St.3d 671.]

672

(No. 94–349—Submitted May 23, 1995—Decided September 13, 1995.)

674

*Cole Co., L.P.A., Leland D. Cole* and *Mark H. Ludwig,* for appellees and cross-appellants, Harry G. Hausman et al.

*Vorys, Sater, Seymour & Pease, Joseph D. Lonardo* and *Martyn T. Brodnik,* for appellee and cross-appellee, BancOhio National Bank.

*J. Anthony Sawyer,* Director of Law, and *Steven R. Milby,* Senior Attorney, for appellant and cross-appellee, city of Dayton.

*Thompson, Hine & Flory, Douglas O. Cooper, Kenton L. Kuehnle* and *Margaret R. Carmany,* urging affirmance for *amici curiae,* Ohio Mortgage Bankers Association, Ohio Bankers Association and Ohio League of Financial Institutions.

MOYER, C.J. In this case, we are asked to determine whether, pursuant to R.C.G.O. 152.01, BancOhio is an "owner" of the property at issue and liable for nuisance abatement.

Dayton's nuisance ordinance R.C.G.O. 152.01 defines "owner" as including: "The owner(s) of record of the premises of fee or lesser estate therein, a mortgagee, vendee in possession, land contract purchaser, assignee of rents,

receiver, executor, administrator, trustee, or lessee, as determined by an examination of the public records of Montgomery County, Ohio, or any other person, firm, or corporation in control of a building, or their duly authorized agents." Dayton contends that BancOhio is an "owner" under the ordinance as a titleholder, or in the alternative, as a mortgagee. BancOhio argues that it is not a titleholder and that it may not constitutionally be held liable as a mortgagee. We will first discuss the possibility of BancOhio's being a titleholder.

# I

The trial court found BancOhio liable as a titleholder by relying on the Montgomery County Court of Appeals' decision in *Hembree v. Mid–America Fed. S. & L. Assn.* (1989), 64 Ohio App.3d 144, 580 N.E.2d 1103. The court read *Hembree* as standing for the proposition that title to mortgaged property transfers automatically from a mortgagor to a mortgagee upon default of a condition of the mortgage. This reliance was misplaced, however, and ignored over one hundred years of precedent established by this court.

In *Martin v. Alter* (1884), 42 Ohio St. 94, 98, this court held, "[i]n the case of a mortgage in the usual form, the legal estate remains in the mortgagor in possession, even after condition broken as to all the world, except the mortgagee. * * * The latter may maintain ejectment or take other legal steps to obtain possession after condition broken, *but until he does so, the mortgagor is at law the owner of the fee.*" (Emphasis added.)

This court revisited the issue of ownership and how it relates to mortgages in *Levin v. Carney* (1954), 161 Ohio St. 513, 53 O.O. 390, 120 N.E.2d 92. We stated that "[i]n order to determine the question of ownership it would appear that the following principles may be deduced * * *:

"1. A mortgage of real property in the usual form is a security for a debt, or for the performance of some other condition.

"2. The legal and equitable title to mortgaged real estate remains in the mortgagor so long as the condition of the mortgage remains unbroken.

"3. After condition broken, the legal title as between the mortgagee and the mortgagor is vested in the mortgagee, subject to the equity of redemption.

"4. Ordinarily, where the relation of mortgagor and mortgagee exists, a mortgagor in possession has not only the right of possession, but this right continues after condition broken until the period of redemption expires or until the mortgagee lawfully gains possession.

"5. Generally a mortgagee in possession of mortgaged real estate, by sufferance or consent, during the period that the right to redeem exists, is a trustee for

the mortgagor and those claiming under him." *Id.* at 520, 53 O.O. at 393, 120 N.E.2d at 97.

In view of these principles, the *Levin* court held that "until a mortgage is foreclosed and a sale consummated, or until a mortgagee obtains possession by ejectment proceedings, the fee to mortgaged real estate * * * remains in the mortgagor." *Id.* Thus, after a mortgagor defaults, legal title passes to the mortgagee only as between the mortgagor and the mortgagee. As to the rest of the world, title remains in the mortgagor until the mortgagee forecloses on the mortgage and the sale is consummated, the mortgagee recovers possession of the property by ejectment proceedings, or the mortgagee otherwise extinguishes the right of the mortgagor to redeem. *Id.* at paragraph three of the syllabus.

In the instant case, BancOhio did foreclose on the mortgage following J.V. Properties' default in payment. However, there were no bids on the property at the sheriff's sale, and thus the sale of the property was never consummated. Moreover, there is no evidence that BancOhio has sued in ejectment to obtain possession of the property. Therefore, BancOhio can be held to be the titleholder of the property only if it otherwise extinguished J.V. Properties' right of redemption.

In Ohio, a mortgagor's right to redeem is "absolute and may be validly exercised at any time prior to the confirmation of sale." *Women's Fed. Sav. Bank v. Pappadakes* (1988), 38 Ohio St.3d 143, 146, 527 N.E.2d 792, 795. This right is dual in nature, arising both from equity and statute. The mortgagor's "equity of redemption" is typically cut off once a mortgagee seeks and is granted a decree of foreclosure. Generally, a common pleas court grants the mortgagor a three-day grace period to exercise the "equity of redemption," which consists of paying the debt, interest and court costs, to prevent the sale of the property. See Hausser & Van Aken, Ohio Real Estate Law and Practice (1993) 744, Section 53.01(D).

A mortgagor's statutory right of redemption emanates from R.C. 2329.33, which provides:

"In sales of real estate on execution or order of sale, *at any time before the confirmation thereof,* the debtor may redeem it from sale by depositing * * * the amount of the judgment or decree upon which such lands were sold, with all costs * * *. The court of common pleas thereupon shall make an order setting aside such sale * * *." (Emphasis added.)

In the case at bar, the trial court that granted BancOhio a foreclosure decree on the property also gave J.V. Properties the standard three days to exercise its equity of redemption. Obviously, J.V. Properties failed to exercise its equity of redemption, and this part of the right to redeem was therefore cut off. What still remains, however, is J.V. Properties' right to redeem under R.C. 2329.33.

Both Dayton and Hausman argue that pursuant to the June 25, 1985 agreement, J.V. Properties waived its statutory right of redemption. Specifically, the third paragraph of the agreement stipulates the following:

"(c) J–V [J.V. Properties] and MMI agree that, due to the default described above, there exists no defense in law or equity, or set-off which could defeat the institution and prosecution to completion and sale of a foreclosure proceeding by BancOhio.

"(d) Notwithstanding paragraph 2(c) [*sic*, 3(c)] of this Agreement, J–V and MMI agree not to assert any defenses or set-offs in opposition to any foreclosure proceeding BancOhio may institute by virtue of the default of J–V under the Dayton Mortgage."

Dayton and Hausman contend that through the agreement BancOhio effectively extinguished J.V. Properties' right of redemption in that the term "set-off" includes the right to redeem. It is true that a mortgagor may waive the right of redemption after the mortgage agreement is entered into, provided the agreement is equitable and supported by adequate consideration. *Shaw v. Walbridge* (1878), 33 Ohio St. 1, paragraph two of the syllabus. We agree with the court of appeals, however, that "the June 25, 1985, agreement was insufficient to waive J.V. Properties' right to redeem the property. * * * The right to redeem is not a *defense* to a foreclosure proceeding or a sale, but rather is an action that must be brought by the mortgagor. [Citation omitted.] It also obviously is not a set-off." (Emphasis *sic*.)

Although the court of appeals does not provide any reasoning for the conclusion that the right of redemption is not a setoff, its conclusion is correct. A "setoff" is an adjustment between two parties, each with a specific debt to the other, that reduces or extinguishes the amount owed to the other. The right of redemption is not a debt owed to the mortgagor by the mortgagee, but rather is a mortgagor's right to take prescribed action to satisfy a debt secured by a mortgage. Therefore, the right of redemption cannot be construed as a setoff, and by waiving its right to exert a setoff, J.V. Properties did not extinguish its right to redeem under R.C. 2329.33. Consequently, BancOhio did not obtain title to the property.

## II

We next examine whether BancOhio can be found liable as a mortgagee.

Under a plain reading of the Dayton nuisance ordinance R.C.G.O. 152.01, a mortgagee may be held liable for abating nuisances occurring on the mortgaged property. The reviewing courts below in effect concluded that such a construction would violate Section 3, Article XVIII of the Ohio Constitution as an

overbroad exercise of the city's police powers.[1] Although this provision—commonly referred to as the Home Rule Amendment—endows a high measure of sovereignty to municipalities, in order to be a valid exercise of the city's police power, the ordinance "must directly promote the general health, safety, welfare or morals and must be reasonable, the means adopted to accomplish the legislative purpose must be suitable to the end in view, must be impartial in operation, must have a real and substantial relation to such purpose and must not interfere with private rights beyond the necessities of the situation." *Teegardin v. Foley* (1957), 166 Ohio St. 449, 2 O.O.2d 462, 143 N.E.2d 824, paragraph one of the syllabus. Essentially, to avoid violating due process, legislative action must bear a real and substantial relation to public health and welfare, and not be unreasonable or arbitrary. *Mominee v. Scherbarth* (1986), 28 Ohio St.3d 270, 28 OBR 346, 503 N.E.2d 717.

It is true that when interpreting an ordinance this court will, where possible, give the ordinance "such construction as will permit it to operate lawfully and constitutionally." *Schneider v. Laffoon* (1965), 4 Ohio St.2d 89, 97, 33 O.O.2d 468, 472, 212 N.E.2d 801, 806. We disagree, however, with the courts below that in order to preserve the constitutionality of the ordinance, it is reasonable to construe the ordinance as applying to mortgagees in possession rather than to mortgagees *not* in possession, as the ordinance clearly specifies. The ordinance could have very easily defined "owner" to include a "mortgagee in possession." In fact, as originally enacted on March 9, 1966, the predecessor ordinance R.C.G.O. 152.01 defined "owner" as an "owner of record of the premises in fee or lesser estate therein, *a mortgagee or vendee in possession,* assignee of the rents, receiver, executor, administrator, trustee, lessee, or other person, firm or corporation in control of a building, or their duly authorized agents. Any such person thus representing the owner shall be bound to comply with the provisions of this ordinance to the same extent as if he were the owner."[2] (Emphasis added.) When the ordinance was amended in 1980, however, "a mortgagee or vendee in possession, * * *" was changed to read "a mortgagee, vendee in possession, * * *." We do not view the rewriting of the ordinance to be a meaningless change. Rather, we believe that it was the clear intent of Dayton City Commission to substitute "mortgagee" for a mortgagee in possession.

---

1. Section 3, Article XVIII reads:
   "Municipalities shall have authority to exercise all powers of local self-government and to adopt and enforce within their limits such local police, sanitary and other similar regulations, as are not in conflict with general laws."

2. Although the original version of R.C.G.O. 152.01 is not provided in the record, and only appears in BancOhio's merit brief to this court, the language of the predecessor ordinance is uncontested by any of the parties involved in this case.

As identified previously, a mortgage of real property is a security for a debt and gives the mortgagee no right of possession or control. *Levin, supra,* at 520, 53 O.O. at 393, 120 N.E.2d at 97. A mortgagee, then, has no ability to create or prevent a nuisance from arising on the mortgaged property, and to hold such a mortgagee liable for abatement would be arbitrary and thus unconstitutional.

In order for the ordinance to remain valid, the unconstitutional reference to "a mortgagee" must be capable of being severed from the ordinance. Severance of the offensive term is permissible where its removal "will not fundamentally disrupt the statutory scheme of which the unconstitutional provision is a part." *State ex rel. Maurer v. Sheward* (1994), 71 Ohio St.3d 513, 523, 644 N.E.2d 369, 377, citing *Geiger v. Geiger* (1927), 117 Ohio St. 451, 466, 160 N.E. 28, 33. Applying this test, we hold that "a mortgagee" is sufficiently independent from the other entities listed in R.C.G.O. 152.01 so that its severance leaves the remaining portion of the ordinance capable of standing on its own. Thus, BancOhio cannot be held liable to abate the nuisance on the property pursuant to R.C.G.O. 152.01 as a mortgagee.

Therefore, we affirm in part and reverse in part the judgment of the court of appeals.

*Judgment affirmed in part*
*and reversed in part.*

DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY, PFEIFER and COOK, JJ., concur.