**CITY OF CLEVELAND, Appellee,**

v.

**EZELL et al., Appellants.**

[Cite as *Cleveland v. Ezell* (1997), 121 Ohio App.3d 570.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 71030, 71031 and 71032.

Decided June 2, 1997.

*Carolyn Watts Allen,* Chief Prosecutor, *Bryan Fritz,* Assistant Prosecutor, for appellee.

*Denise J. Knecht & Associates and Daniel J. Nealon,* for appellants.

TIMOTHY E. McMONAGLE, Judge.

In this consolidated appeal, defendants-appellants, Sam Ezell, Curtis Wiggins, and Corey Hargrove, challenge their convictions for violating various subsections of Cleveland Codified Ordinances 471.06 on the basis that the ordinance is constitutionally infirm.

Defendants Ezell, Wiggins, and Hargrove are members of an Islamic sect that encourages its members to distribute its religious newspaper, The Final Call. Defendants would wait for a traffic light to turn red and then proceed into the street between stopped cars to solicit sales of the newspaper. Sometime between August and November 1995, each defendant was charged with violation of the ordinance at issue. Defendants Wiggins and Ezell were each charged with violating Cleveland Codified Ordinances 471.06(b), while defendant Hargrove was charged with violating not only 471.06(b) but 471.06(c) and (d) as well. Wiggins and Hargrove entered pleas of no contest, while defendant Ezell pled not guilty.

Ezell moved to dismiss the charges on the basis that the ordinance was unconstitutional. At the hearing on the motion, the trial court denied the motion, stating:

"Based solely upon that, the court finds that the motion to dismiss is not properly taken and overrules the motion to dismiss, based solely on the fact that it's the court's interpretation that the city of Cleveland, the councilmen of the city of Cleveland, have a right to determine that for the purposes of the general health, welfare, and safety, they have a right to curtail the activities which we understand pertain to freedom of speech."

At the subsequent bench trial, Ezell was found guilty and received a thirty-day suspended jail sentence and a fine of $100. Defendant Wiggins was found guilty on his no-contest plea and received the same sentence as Ezell. Defendant Hargrove likewise was found guilty and received a thirty-day suspended jail sentence and a $100 fine on each of the three counts with which he was charged. Execution of sentence was stayed pending appeal for all defendants.

Defendants timely appeal and assert the following errors for our review:

"I.   The trial court erred when it failed to find Cleveland Codified Ordinance No. 1163–95 Section 471.06 overbroad on its face.

"II.   The trial court erred when it failed to find Cleveland Codified Ordinance No. 1163–95 Section 471.06 impermissibly vague on its face."

Defendants-appellants contend that the ordinance at issue is impermissibly vague and overbroad. Specifically, they argue that the ordinance is vague on its face because it fails to provide reasonable notice of prohibited conduct and is overbroad in that it criminalizes conduct that is constitutionally protected.

A fundamental principle of constitutional law is that if one provision in a statute is found to be unconstitutional, the remaining provisions are not affected by that determination unless those provisions are "essentially and inseparably connected in substance" to the unconstitutional provision.[1] Hence, if the remaining portions of the statute are complete in and of themselves and capable of independent execution, those portions must remain intact.[2]

In this case, appellants urge this court to find Cleveland Codified Ordinances 471.06 unconstitutional. While all appellants were charged with violating subsection (b) of this ordinance,[3] only appellant Hargrove was charged with, and ultimately convicted of, violating subsections (c) and (d). Moreover, appellants' arguments address only the constitutionality of subsections (c) and (d), and they do not present any argument relative to subsection (b). Because this court finds that subsections (c) and (d) are not inseparably connected in substance to the other provisions of the ordinance, our review is limited to the constitutionality of these two provisions as they affect appellant Hargrove only. We express no opinion as to the constitutionality of the other provisions in the ordinance.

---

1.   *State v. McCallion* (1992), 78 Ohio App.3d 709, 715, 605 N.E.2d 1289, 1293, citing *Bowles v. State* (1881), 37 Ohio St. 35, 44; see, also, *Hausman v. Dayton* (1995), 73 Ohio St.3d 671, 679, 653 N.E.2d 1190, 1196.

2.   *State ex rel. Herbert v. Ferguson* (1944), 142 Ohio St. 496, 503, 27 O.O. 415, 418, 52 N.E.2d 980, 983–984.

3.   This subsection provides that "[n]o person shall stand on a highway for the purpose of soliciting employment, business or contributions from the occupant of any vehicle."

Consequently, our review is confined to examining the following language from subsections (c) and (d) of Cleveland Codified Ordinances 471.06:

"(c) No person shall stand on a street or highway and transfer any item, object or package for currency or anything of value to motorists or passengers of any vehicle.

"(d) No person shall stand on a street or highway and repeatedly stop, beckon to, or attempt to stop vehicular traffic by hailing, waving arms or making other bodily gestures."

It is well established that all legislative enactments enjoy a strong presumption of constitutionality.[4] Moreover, a statute is to be construed as being in conformity with the Ohio and United States Constitutions.[5] The same is true when interpreting an ordinance.[6] A party challenging a statute must prove that it is unconstitutional beyond a reasonable doubt.[7]

I

The Void–for–Vagueness Doctrine

Appellants claim that the provisions of the ordinance at issue fail to give reasonable notice of what conduct is prohibited and likewise fail to set forth reasonable standards for its enforcement. They further claim that the ordinance was enacted as an emergency measure to combat drug-related activities. In this regard, appellants argue that the ordinance can be interpreted differently by different individuals and, as such, is impermissibly vague. Such vagueness, appellants continue, leads to arbitrary and selective enforcement.

A statute is void for vagueness if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute * * * [or if] it encourages arbitrary and erratic arrests and convictions."[8] Citing *Grayned v. Rockford*,[9] the Supreme Court of Ohio in *State v. Tanner*[10] stated:

4. *In re Columbus Skyline Securities, Inc.* (1996), 74 Ohio St.3d 495, 498, 660 N.E.2d 427, 429.

5. *State v. Tanner* (1984), 15 Ohio St.3d 1, 2, 15 OBR 1, 1–2, 472 N.E.2d 689, 690.

6. *Hausman v. Dayton*, 73 Ohio St.3d at 678, 653 N.E.2d at 1195–1196.

7. *Hilton v. Toledo* (1980), 62 Ohio St.2d 394, 396, 16 O.O.3d 430, 431–432, 405 N.E.2d 1047, 1049; *State v. Dario* (1995), 106 Ohio App.3d 232, 236, 665 N.E.2d 759, 761.

8. *Papachristou v. Jacksonville* (1972), 405 U.S. 156, 162, 92 S.Ct. 839, 843, 31 L.Ed.2d 110, 115.

9. *Grayned v. Rockford* (1972), 408 U.S. 104, 108–109, 92 S.Ct. 2294, 2298–2299, 33 L.Ed.2d 222, 227–228.

"Three 'values' rationales are advanced to support the 'void for vagueness' doctrine. * * * These values are first, to provide fair warning to the ordinary citizen so behavior may comport with the dictates of the statute; second, to preclude arbitrary, capricious and generally discriminatory enforcement by officials given too much authority and too few constraints; and third, to ensure that fundamental constitutionally protected freedoms are not unreasonably impinged or inhibited."

█ While due process requires that the terms of a criminal statute be reasonably clear and definite, a statute is not void solely because it could have been drafted more precisely.[11] "Condemned to the use of words, we can never expect mathematical certainty from our language."[12] Nonetheless, the statute must specify some standard of conduct in order to overcome a void-for-vagueness challenge.[13]

█ Appellants contend that the language contained in subsections (c) and (d) of the challenged ordinance fails to apprise an individual that otherwise lawful activity would constitute criminal conduct. Specifically, they argue that "transferring any item, object or package for currency to motorists or passengers in any vehicle" and "attempting to stop vehicular traffic by hailing, waving arms or * * * other bodily gestures" fail to distinguish between criminal conduct and that which is otherwise innocent.

We find nothing vague about the language employed in subsections (c) and (d). To the contrary, "hailing" or "waving arms" in an attempt to stop traffic is clear and precise, as is "transferring any item or object." Appellants rely on *Akron v. Rowland*,[14] which determined that an Akron ordinance prohibiting acts "manifesting a purpose to engage in drug-related activity" was too vague to place an individual on notice of illegal conduct. While the standard of acts "manifesting" illegal activity is conducive to conjecture, "hailing," "waving arms" and "transferring any item or object" are not.

Appellants claim that the ordinance is subject to selective enforcement against minorities. Their arguments, however, are purely conclusory and unsupported. While this may well be the case, we are unable to decide this issue on the state of

10. *State v. Tanner* (1984), 15 Ohio St.3d 1, 3, 15 OBR 1, 2–3, 472 N.E.2d 689, 691.

11. *State v. Dorso* (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 150–151, 446 N.E.2d 449, 450–451.

12. *Grayned*, 408 U.S. at 110, 92 S.Ct. at 2300, 33 L.Ed.2d at 228–229.

13. *Coates v. Cincinnati* (1971), 402 U.S. 611, 614, 91 S.Ct. 1686, 1688, 29 L.Ed.2d 214, 217–218.

14. *Akron v. Rowland* (1993), 67 Ohio St.3d 374, 618 N.E.2d 138.

the record before us. Because we have determined that the language is definite with regard to what is prohibited under subsections (c) and (d) of this ordinance, the risk of arbitrary enforcement, though not obliterated, is minimized. Consequently, we will leave for another day the argument advanced by appellants relative to selective enforcement.

Accordingly, appellants' second assignment of error is not well taken and is hereby overruled.

## II

### Overbreadth Doctrine

Nonetheless, despite clear and concise language, a statute or ordinance may be found to be impermissibly overbroad if it sweeps within its reach constitutionally protected conduct.[15] Because of the potential to deter privileged activity, a party challenging a statute as overbroad may prevail by showing that its potential application reaches a significant amount of protected activity. Consequently, criminal statutes "that make unlawful a substantial amount of constitutionally protected conduct may be held facially invalid even if they also have legitimate application."[16] A statute is substantially overbroad if it is "susceptible of regular application to protected expression."[17]

Appellants claim that the above ordinance is overbroad on its face because "beckoning," "hailing" or "waving" to stop vehicular traffic encompasses innocent and lawful activities such as hailing a taxicab or stopping traffic in an emergency. Appellants further argue that paying a taxi fare would fall under "transferring currency to a motorist," another lawful and innocent activity. The city, on the other hand, maintains that the challenged ordinance legitimately protects solicitors and motorists from the risk of injury due to traffic accidents that are likely to occur when a solicitor enters the highway for the purpose of selling newspapers. Furthermore, the city claims that appellants are not prevented from selling their newspapers. To the contrary, it argues that appellants are prevented only from selling them on the highway, where the risk of injury is great.

We find that the subsections (c) and (d) of the challenged ordinance are not overly broad. Appellants have not shown that the challenged provisions criminalize a substantial amount of constitutionally privileged activity. The statute is not

---

15. *Grayned v. Rockford,* 408 U.S. at 114, 92 S.Ct. at 2302, 33 L.Ed.2d at 231.

16. *Houston v.* Hill (1987), 482 U.S. 451, 458–459, 107 S.Ct. 2502, 2508, 96 L.Ed.2d 398, 410.

17. *Id.* at 467, 107 S.Ct. at 2512, 96 L.Ed.2d at 415.

aimed at abridging the expression of ideas but at restricting conduct that could cause serious physical injury to both solicitors and motorists. Accordingly, appellants' first assignment of error is not well taken and is hereby overruled.

Having determined that subsections (c) and (d) of Cleveland Codified Ordinances 471.06 are not unconstitutionally vague or overbroad, we sustain appellant Hargrove's conviction under this ordinance. The convictions of appellants Ezell and Wiggins are likewise sustained, as no argument was presented challenging the constitutionality of the provisions under which they were convicted.

*Judgment affirmed.*

KARPINSKI, J., concurs.

BLACKMON, C.J., dissents.

BLACKMON, Chief Judge, dissenting.

I respectfully dissent from the majority opinion. The majority opinion upholds the city's ordinance on its face, whereas I believe it is invalid as applied to the appellants. Under the plain error doctrine, a reviewing court is granted the prerogative of reviewing an error that was not raised. Appellant Hargrove raised what appeared to me to be an attack based only on vagueness and facial overbreadth of the ordinance. Appellants Ezell and Wiggins did not present argument on their case. Regardless of this defect, I would have gone beyond the facial attack and reviewed this case under the public-forum doctrine as plain error. Under the public-forum doctrine, this ordinance as applied to all of the appellants is unconstitutional.

Appellants were selling the Nation of Islam's newspaper, The Final Call, while they were located on a public street. History teaches us that the public street is the ideal public forum where ideas and information are freely traded. *Perry Edn. Assn. v. Perry Local Educator's Assn.* (1983), 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–956, 74 L.Ed.2d 794, 804–805.

Free trade of ideas at a public forum rests at the very heart of the First Amendment, "and speech in public areas is at its most protected on public sidewalks, a prototypical example of a traditional public forum." *Schenck v. Pro–Choice Network of W. New York* (1997), 519 U.S. 357, 117 S.Ct. 855, 137 L.Ed.2d 1. Just as the sidewalk is considered a prototypical example of a traditional public forum, so is the street. *Perry Edn. Assn.*, at 45–46, 103 S.Ct. at 954–956, 74 L.Ed.2d at 804–805.

Streets and parks have "immemorially been held in trust for the use of the public and, time out of mind, have been used for the purposes of assembly,

communicating thoughts between citizens, and discussing public questions."
*Hague v. CIO* (1938), 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423, 1436.
Although *Hague* pointed to the balancing aspects of peace and good order,
general comfort, and convenience, it strictly held that First Amendment activity
on the street cannot be denied in the guise of a regulation. *Id.* at 516, 59 S.Ct. at
964, 83 L.Ed. at 1437. The relevancy of *Hague* is not so much its facts but its
use of a higher scrutiny when the public forum is the street.

The United States Supreme Court has always recognized how important the
street is as a place where communication thrives for those who lack access to
more elaborate and maybe costly channels. *Martin v. Struthers* (1943), 319 U.S.
141, 63 S.Ct. 862, 87 L.Ed. 1313. Here, the appellants used the street just as
*Martin* anticipated. Although not the typical store-front approach to newspaper
peddling, it was nonetheless effective in reaching customers in a less costly way.

The city, of course, defends its regulation by arguing that the appellants had
access to the sidewalks. However, the Supreme Court has invalidated state laws
that infringe on First Amendment activity when the state claims the speaker had
other available alternative ways to transmit the speaker's message. *Spence v.
Washington* (1974), 418 U.S. 405, 94 S.Ct. 2727, 41 L.Ed.2d 842. This is
especially true when the speaker is on the street. In this case, the street was the
ideal public forum because of the ability to access the traffic that was on the
street. In my view, there is no difference between cars driving up to a red light
and people walking on the streets and sidewalks. Besides, the peddlers ap-
proached the cars only when the cars were stopped at a red light.

Now, I am mindful of the city's argument that its ordinance is a valid safety
regulation aimed solely at the noncommunicative impact of the appellants'
activity, which it argues requires only minimal scrutiny. However, even under
this minimal scrutiny, the city has to show that there is sufficient space for the
First Amendment activity to take place. The city argues that appellants could
use the sidewalk. However, under the public-forum doctrine, they need not be
relegated to the sidewalk. They may use the street, the ideal public forum.

Besides, I am troubled by the city's safety defense. Before the city started to
use Section 471.06, it used Section 675.02(a), which made no distinction between
sidewalk peddlers and street peddlers. All peddlers were the same and equally
allowed to peddle their papers on either the street or sidewalk, so long as they
were licensed to do so by the city. When Section 675.02(a) was ruled unconstitu-
tional, the city started using Section 471.06. Under Section 471.06, street peddling
was forbidden.

Now that Section 675.02(a) has been held constitutional by the Sixth Circuit
Court of Appeals, I believe that the city will allow street peddling by licensed
peddlers. See *Northeast Ohio Coalition For the Homeless v. Cleveland* (C.A.6,

1997), 105 F.3d 1107. This fact leads me to conclude that the city's safety argument is disingenuous.

In conclusion, I believe it is plain error to apply Section 471.06 to the appellants' First Amendment activity. When First Amendment activity is involved and the location of that activity is a public forum, great care must be used to scrutinize the regulation forbidding that activity. When great care is used to scrutinize the city's ordinance, it is clear that it burdens more First Amendment activity than is necessary to serve its presumed safety interest. I would have discharged these appellants.