O’Donnell, J.,
dissenting.
{¶ 65} Respectfully, I dissent.
{¶ 66} At issue here are the provisions of R.C. 2953.73(E), which purport to vest this court with exclusive appellate jurisdiction to review the trial court’s denial of postconviction DNA testing pursuant to R.C. 2953.71 et seq.
{¶ 67} R.C. 2953.73(E) provides:
*344 A judgment and order of a court entered under division (D) of this section is appealable only as provided in this division. If an eligible offender submits an application for DNA testing under section 2953.73 of the Revised Code and the court of common pleas rejects the application under division (D) of this section, one of the following applies:
(1) If the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the offender may seek leave of the supreme court to appeal the rejection to the supreme court. Courts of appeals do not have jurisdiction to review any rejection if the offender was sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing.
(2) If the offender was not sentenced to death for the offense for which the offender claims to be an eligible offender and is requesting DNA testing, the rejection is a final appealable order, and the offender may appeal it to the court of appeals of the district in which is located that court of common pleas.
{¶ 68} I agree with the majority that this statute is unconstitutional because it creates different appellate remedies for capital and noncapital offenders: capital offenders may seek leave to appeal to the Ohio Supreme Court, but noncapital offenders may appeal to a district court of appeals as of right. However, I dissent from the remedy imposed by the majority to selectively sever words, not provisions, from the statute, changing the discretionary appeal to the supreme court intended by the General Assembly into a direct appeal to this court.
Severance
{¶ 69} R.C. 1.50 permits courts to sever unconstitutional provisions of a statute in order to preserve its constitutional provisions:
If any provision of a section of the Revised Code or the application thereof to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the section or related sections which can be given effect without the invalid provision or application, and to this end the provisions are severable.
Thus, our role in applying the severance remedy is to determine whether we can give effect to the statute “without the invalid provision.”
{¶ 70} But the authority to sever the unconstitutional part of a statute does not give this court license to rewrite it by selectively deleting words to change the *345 meaning of the language that the legislature enacted. Rather, we are to consider whether the unconstitutional provision is capable of separation from the remaining parts of the statute.
{¶ 71} The majority notes that “the court has severed portions of a statute on a number of occasions.” Majority opinion at ¶ 49. That may be true, but that does not justify selectively deleting words to rewrite the statute that the legislature enacted. Notably, the court in State ex rel. Sunset Estate Properties, L.L.C. v. Lodi 142 Ohio St.3d 351, 2015-Ohio-790, 30 N.E.3d 934, ¶ 18, Cleveland v. State, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, ¶ 20-21, Norwood v. Horney, 110 Ohio St.3d 353, 2006-Ohio-3799, 853 N.E.2d 1115, ¶ 127, and State v. Hochhausler, 76 Ohio St.3d 455, 464, 668 N.E.2d 457 (1996), deleted whole sentences from the statute. And while the court in Hausman v. Dayton, 73 Ohio St.3d 671, 679, 653 N.E.2d 1190 (1995), and State ex rel. Maurer v. Sheward, 71 Ohio St.3d 513, 523-524, 644 N.E.2d 369 (1994), struck words, it did so to eliminate one or more terms in a series that were unconstitutional while allowing the valid provisions to remain. In each of these cases, the court struck the invalid provisions in their entirety.
{¶ 72} The majority, however, now asserts that in applying the severance remedy, the court must, “whenever possible,” respect the role of the legislature to create laws by saving as much of a statutory scheme as possible through severing what is unconstitutional and allowing what is not to remain. Majority opinion at ¶ 46. That test, however, has never been part of our jurisprudence until today.
{¶ 73} In Cleveland v. State, for example, the court invalidated a provision of R.C. 4921.25, which at that time provided:
Any person, firm, copartnership, voluntary association, joint-stock association, company, or corporation, wherever organized or incorporated, that is engaged in the towing of motor vehicles is subject to regulation by the public utilities commission as a for-hire motor carrier under this chapter. Such an entity is not subject to any ordinance, rule, or resolution of a municipal corporation, county, or township that provides for the licensing, registering, or regulation of entities that tow motor vehicles.
2012 Am.Sub.H.B. No. 487.
{¶ 74} We held that the first sentence of the statute was constitutional but that the second sentence was not, because it “unconstitutionally limits municipal home-rule authority.” Cleveland, 138 Ohio St.3d 232, 2014-Ohio-86, 5 N.E.3d 644, at ¶ 17. Applying the majority’s novel severance remedy advanced today, we could have saved as much of a statutory scheme as possible by simply deleting the word “not” from the second sentence of former R.C. 4921.25. We did not, because doing so would have usurped the role of the General Assembly. Rather, *346 because the second sentence of former R.C. 4921.25 created an unconstitutional limitation on municipal home rule, we severed it in its entirety.
{¶ 75} The majority points to a case supporting its novel position, State ex rel. Doersam v. Indus. Comm., 45 Ohio St.3d 115, 543 N.E.2d 1169 (1989). In Doersam, the court held that an amendment to R.C. 4123.59(B) violated equal protection by creating two classes of claimants who may receive workers’ compensation death benefits and providing greater benefits “ ‘if the death is due to injury received or occupational disease first diagnosed after January 1, 1976.’ ” (Emphasis omitted.) Doersam at 117, quoting former R.C. 4123.59(B), Am.Sub.H.B. No. 545, 136 Ohio Laws, Part I, 1075, 1167. Although the court initially struck the amendment in its entirety with the effect of eliminating increased benefits for all claimants, id. at 121, fn. 1, on reconsideration a majority of the court decided to strike the phrase “if the death is due to injury received or occupational disease first diagnosed,” resulting in all claimants receiving increased benefits, id. at 122.
{¶ 76} Doersam was wrongly decided and represents a blatant exercise of judicial activism. As Justice Wright indicated in his separate opinion, the majority’s approach, “well meaning though it may be,” id. at 124 (Wright, J., concurring in part and dissenting in part), failed to recognize the difference between severing a part of a statute—leaving any remedy to the wisdom of elected lawmakers—and amending it by judicial fiat. In his view, “the entire [provision] must be stricken rather than the court picking and choosing words to delete.” Id. at 123. And because it was the entire amendment that violated equal protection, it was the entire amendment that had to be severed.
{¶ 77} In this case, the invalid provision to be severed is the entirety of R.C. 2953.73(E), because that provision denies capital offenders equal protection of law by providing different appellate remedies for capital and noncapital offenders. The majority, by selectively striking words from within this provision—deleting only the phrase “seek leave of the supreme court to”—has not severed an invalid statutory provision but rather has engaged in judicially legislating from the bench, because it transforms a capital offender’s discretionary appeal into a direct appeal to this court.
{¶ 78} Thus, contrary to its claim to the contrary, it is the majority’s remedy that fails the severance test established in Geiger v. Geiger, 117 Ohio St. 451, 466, 160 N.E. 28 (1927). The threshold question in that test is, “ ‘Are the constitutional and the unconstitutional parts capable of separation so that each may be read and may stand by itself?’” (Emphasis added.) Id., quoting State v. Bickford, 28 N.D. 36, 147 N.W. 407, 409 (1913). The point of the first prong of the Geiger test *347 is to ensure that a court severs the invalid provision in its entirety rather than selectively deleting a few words from within it, and here, it is manifest that the phrase “seek leave of the supreme court to” cannot be read and stand by itself.
{¶ 79} Further, severance is appropriate only if it serves and effectuates legislative intent. The majority, however, only speculates that the General Assembly, if it had foreseen our decision today, would have provided a direct appeal as of right to our court rather than a direct appeal to the courts of appeals, which the legislature has afforded to all other offenders requesting DNA testing as well as all those seeking postconviction relief. The duty to review error allegedly occurring in postconviction proceedings in death-penalty cases belongs in the first instance to the appellate courts of this state. See generally State v. Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516.
{¶ 80} The majority claims that severing R.C. 2953.73(E) in its entirely changes the meaning of the statute as enacted by granting the state a right to a direct appeal not provided by the statute. However, the state’s right to appeal in a criminal case is provided by R.C. 2945.67(A), not R.C. 2505.03, and thus, severance of R.C. 2953.73(E) would potentially allow the state an appeal by leave of the appellate court, not an appeal as of right. This results not from rewriting the statute but because generally applicable law—here, R.C. 2945.67(A)—fills the gap left by the severed invalid provisions.
{¶ 81} There is a difference between a severance that makes preexisting law applicable and a severance that rewrites a statute by selectively deleting its words to reach a specific result, and that distinction is respected by our case precedent.
{¶ 82} For instance, the majority cites State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, as an example of the court’s respecting the role of the legislature to create laws by saving as much of a statutory scheme as possible through severing what is unconstitutional and allowing what is not to remain. Majority opinion at ¶ 52. But in Foster, we concluded that various provisions of Am.Sub.S.B. No. 2 (“S.B. 2”), 146 Ohio Laws, Part IV, 7136, violated the Sixth Amendment right to a jury trial and held that these “sections are severed and excised in their entirety.” (Emphasis added.) Foster at ¶ 97. The Foster remedy similarly reinstated preexisting law, such as the common law presumption that multiple sentences run consecutively, filling the gaps left when we severed the invalid provisions of S.B. 2. See State v. Bates, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 16, 18.
{¶ 83} In applying the severance remedy in Foster, we explicitly sought to uphold the legislative intent of the General Assembly in enacting S.B. 2, and we decided that “[rjemoving presumptive terms and preserving the remainder of the sentencing provisions of the code will most effectively preserve the General *348 Assembly’s goal of truth in sentencing.” Foster at ¶ 102. And although we recognized that severance arguably “vitiates S.B. 2’s goals,” id. at ¶ 100, we nonetheless explained that “we are constrained by the principles of separation of powers and cannot rewrite the statutes,” id., emphasizing that “[hjowever tempting it may be for this court to reconfigure the sentencing code to cause the least impact on our criminal-justice system, we must adhere to our traditional judicial role,” id. at ¶ 102.
Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela Holder, Assistant Prosecuting Attorney, for appellee.
Ohio Innocence Project and Mark Godsey; and Timothy Young, Ohio Public Defender, and Carrie Wood, Assistant Public Defender, for appellant.
{¶ 84} In my view, R.C. 2953.73(E) is unconstitutional, and as in Foster, we should resist the temptation to reconfigure by judicial fiat the invalid appellate process that the legislature enacted. Severing R.C. 2953.73(E) from the statute and severing R.C. 2953.72(A)(8) and (9)—which require the form for requesting DNA testing to provide notice of the offender’s appellate rights as provided in R.C. 2953.73(E)—is in line with our precedent and permits this court to give effect to the remaining provisions of R.C. 2953.71 et seq., clarifying that an offender denied DNA testing may bring a direct appeal to the court of appeals pursuant to the law governing appeals in other postconviction proceedings, in accord with our holding in Davis, 131 Ohio St.3d 1, 2011-Ohio-5028, 959 N.E.2d 516, in which we stated:
A holding that the Supreme Court has exclusive jurisdiction over all matters relating to a death-penalty case would be contrary to the language of the constitutional amendments and the statute and would have the effect of delaying the review of future cases, a scenario that the voters expressly rejected in passing the constitutional amendments. We see no reason why the courts of appeals may not currently entertain all appeals from the denial of postjudgment motions in which the death penalty was previously imposed.
(Emphasis sic and footnote omitted.) Id. at ¶ 22.
{¶ 85} For these reasons, I would sever the provisions of R.C. 2953.73(E) and 2953.72(A)(8) and (9) and transfer this appeal to the Eleventh District Court of Appeals for its consideration of this matter in the first instance.
Kennedy and Fbench, JJ., concur in the foregoing opinion.
*349 Michael DeWine, Attorney General, Eric E. Murphy, State Solicitor, Peter T. Reed, Deputy Solicitor, and Thomas E. Madden, Senior Assistant Attorney General, urging affirmance for amicus curiae, Ohio Attorney General Michael DeWine.