[Cite as *Yidi, L.L.C. v. JHB Hotel, L.L.C.*, 2017-Ohio-1285.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 104856

---

## YIDI, L.L.C.

### PLAINTIFF-APPELLEE

vs.

## JHB HOTEL, L.L.C., ET AL.

### DEFENDANTS-APPELLANTS

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-15-850496

**BEFORE:** Keough, A.J., Kilbane, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 6, 2017

**ATTORNEYS FOR APPELLANTS**

Jeffery D. Rengel
Thomas R. Lucas
Rengel Law Office
The Rengel Building
421 Jackson Street
Sandusky, Ohio 44870


**ATTORNEYS FOR APPELLEE**

**FOR MARK E. DOTTORE, RECEIVER**

Harvey Labovitz
Elizabeth E. Collins
Tim L. Collins
Joseph Gutkoski
Collins & Scanlon, L.L.P.
3300 Terminal Tower
50 Public Square
Cleveland, Ohio 44113

**FOR YIDI, L.L.C.**

Robert T. Glickman
Robert R. Kracht
Charles A. Nemer
Danielle G. Garson
McCarthy, Lebit, Crystal & Liffman Co.
101 West Prospect Ave., Suite 1800
Cleveland, Ohio 44115

KATHLEEN ANN KEOUGH, A.J.:

**{¶1}** Defendants-appellants, JHB Hotel L.L.C., 3M Realty L.L.C., 3M Development L.L.C., and Hickory Court L.L.C. (collectively "appellants"), appeal from the trial court's judgment approving the receiver's motion to sell real property (the "sale order"). Finding no merit to the appeal, we affirm.

## I. Background and Procedural History

**{¶2}** This case originated in August 2015, when plaintiff-appellee, Yidi, L.L.C. ("Yidi"), filed a breach of contract and foreclosure action against appellants seeking repayment for a series of loans guaranteed by three properties located on Euclid Avenue in Cleveland (the "property").

**{¶3}** The trial court, upon Yidi's request and pursuant to an agreed order, appointed Mark Dottore as receiver (the "receiver"). The court subsequently granted the receiver's unopposed motion to approve (1) the retention of Hanna Commercial and David Wagner to market the property, and (2) the procedures for the marketing of the property and the submission of sealed bids on the property.

**{¶4}** After vetting several potential buyers, the receiver ultimately determined that a $9.1 million bid from Alto Partners, L.L.C. ("Alto") was the highest and best offer for the property. On July 20, 2016, he filed a motion seeking a court order authorizing him to sell the property to Alto. The court set a hearing on the receiver's motion for August 2, 2016. The day before the hearing, appellants filed a "notice of filing competing offer to purchase receivership property" with the trial court. The offer was

for $9.5 million by SRI, L.L.C., the equity investor in JHB Hotel, L.L.C., the fee simple title holder to the property. (Thus, the offer was essentially by appellants.)

{¶5} The trial court held the scheduled hearing on August 2, 2016. Wagner, the receiver, and Michael Sabracos, president of U.S. operations for Alto, testified at the hearing. The receiver testified that the Alto offer was the highest and best offer for the property because Alto had submitted documentation demonstrating that it had the financial ability to purchase the property, had experience in developing similar commercial properties, and had committed $450,000 in nonrefundable monies if the deal ultimately did not go forward. He testified that although SRI's offer was higher, it had not been submitted in accordance with the sealed bidding procedures and that SRI, unlike Alto, had not submitted any documentation regarding its financial ability to close on the transaction and complete the project. Further, SRI's bid contained a 30-day contingency and a $100,000 refundable deposit. He admitted, however, that he had not fully vetted SRI's offer.

{¶6} After the hearing, on August 4, 2016, the trial court granted the receiver's motion and issued the sale order authorizing the receiver to sell the property to Alto. As part of the sale order, the trial court granted appellants three days to exercise their equity of redemption. This appeal followed.

## II. Law and Analysis

### A. Standard of Review

**{¶7}** We review the trial court's decision approving the receiver's sale of real property for an abuse of discretion. *Huntington Bank L.L.C. v. Prospect Park L.L.C.*, 8th Dist. Cuyahoga No. 97720, 2012-Ohio-3261, ¶ 5, citing *Huntington Natl. Bank v. Motel 4 BAPS, Inc.*, 191 Ohio App.3d 90, 2010-Ohio-5792, 944 N.E.2d 1210 (8th Dist.); *Wells Fargo Bank, N.A. v. Odita*, 10th Dist. Franklin No. 13AP-663, 2014-Ohio-2540, ¶ 15. An abuse of discretion occurs when a trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**B.    A Reasonable Time for Redemption**

**{¶8}** Under R.C. 2735.04(D)(7),

> *[t]he court's order* approving the application by a receiver or first mortgage holder for authority to sell real property under division (D)(2)(a) of this section *shall establish a reasonable time, but not less than three days*, after the date of the order approving the specific sale or the sale process *for the owner* and all other parties possessing an equity of redemption in the real property *to exercise their equity of redemption* in the real property or to have that equity of redemption forever barred. *Section 2329.33 of the Revised Code does not apply to a sale by a receiver under this section.*

(Emphasis added.)

**{¶9}** In their first assignment of error, appellants contend that the trial court abused its discretion by not offering them a "reasonable time" for redemption under R.C. 2735.04. More specifically, appellants contend that the trial court's sale order did not set a reasonable time for redemption because it allowed Alto 90 days to close the transaction but gave them only three days to redeem. Appellants contend that they should have been given the same period of time to redeem the property as Alto had to close on the property.

Appellants further contend that because Alto's purchase agreement allowed it to make installment payments, the trial court should have given them the same installment schedule for redemption as Alto had for purchase. Appellants' arguments are without merit.

{¶10} Ohio law recognizes that mortgagors have an equitable right of redemption to pay the debt, interest, and court costs to prevent the sale of the property. *Aurora Bank F.S.B. v.Gordon*, 8th Dist. Cuyahoga No. 103138, 2016-Ohio-938, ¶ 24. The equitable right of redemption is cut off, however, when a decree of foreclosure is issued. *Id.*, citing *Hausman v. Dayton*, 73 Ohio St.3d 671, 676, 653 N.E.2d 1190 (1995). Courts will generally allow a three-day grace period following the decree to allow a mortgagor to exercise its equitable right to redeem the property. *Id.*

{¶11} Ohio law also provides for a statutory right of redemption that is independent of the equitable redemption right. Under R.C. 2329.33, a mortgagor, at any time prior to confirmation of the sale, may redeem the property by depositing the "amount of the judgment" with all costs in the common pleas court.

{¶12} Importantly, however, Ohio's receivership statute, which allows a receiver to sell real property pre-judgment free and clear of all liens, does not provide that mortgagors be given until confirmation of the sale to exercise their right of redemption. Rather, under R.C. 2735.04(D)(7), when property is sold by a receiver, the trial court must set a "reasonable time," but not less than three days after the sale order, for the owner and all parties possessing an equity of redemption in the property to exercise their

equity of redemption.  R.C. 2735.04(D)(7) specifically provides that "Section 2329.33 of the Revised Code does not apply to a sale by a receiver under this section."

**{¶13}** Appellants argue that "principles of reasonableness and fairness would dictate that [they] should have the same schedule for redemption" as Alto had to close the sale.  In short, appellants insist that the three-day period for redemption was not reasonable because it did not allow their equitable right of redemption to continue to be available until the transaction closed.  That is, appellants contend they were entitled to the same period of redemption as provided in R.C. 2329.33.

**{¶14}** Appellants' argument, however, ignores the specific exclusion of R.C. 2735.04(D)(7) that "Section  2329.33 of the Revised Code does not apply to a sale by a receiver under this section."  This court has found that it is "well settled" that "R.C. Chapter 2329 does not apply to receivership cases." *Prospect Park L.L.C.*, 8th Dist. Cuyahoga No. 97720, 2012-Ohio-3261 at ¶ 1.  Were appellants' argument to prevail, the statutory language in R.C. 2735.04(D)(7) excluding the application of R.C. Chapter 2329.33 to receivership sales of real property would be rendered meaningless.

**{¶15}** Despite appellants' arguments otherwise, the three-day time period for redemption of the property was a "reasonable time" for them to exercise their equitable right to redeem.  As noted in the sale order, all of the parties were well aware since shortly after the receiver's appointment that the receiver intended to sell the property.  Three hundred forty three days elapsed from when the receiver was appointed on September 2, 2015, until the expiration of the redemption period on August 9, 2016.

Further, the receiver filed his motion seeking authority to sell the property to Alto for $9.1 million on July 20, 2016. Thus, appellants were on notice 20 days prior to the redemption deadline. It is apparent, therefore, that appellants had adequate notice and time to redeem the property, even with the three-day redemption period set forth in the sale order.

{¶16} Appellants also argue that the trial court's order was not reasonable because it did not allow them to make installment payments to exercise their equity of redemption even though Alto's purchase agreement allowed it to make installment payments. Redemption rights cannot be applied piecemeal, however. Under the receivership statute, to exercise the equity of redemption, a mortgagor must pay the receiver

> by cashier's check or other form of immediately available funds an amount equal to the greater of the following: (i) the sale price at which the real property was sold; (ii) an amount equal to the total of all liens upon the real property that were to be canceled as liens upon the real property by virtue of the sale, including all principal, interest, costs, and other amounts secured by those liens through the date of payment to the receiver.

{¶17} R.C. 2735.04(D)(8)(a). Thus, to properly exercise its redemption rights, a mortgagor must pay — in full — either the sale price or the total amount of all liens upon the property. A mortgagor may not exercise its redemption rights in installment payments. *See Hausman*, 73 Ohio St.3d at 676, 653 N.E.2d 1190 (the equity of redemption "consists of paying the debt, interest, and court costs, to prevent the sale of the property.").

**{¶18}** The trial court's sale order giving appellants three days to exercise their equitable right of redemption set a "reasonable time" for redemption. Accordingly, the first assignment of error is overruled.

## C. The Highest and Best Offer

**{¶19}** In their second assignment of error, appellants contend that the trial court abused its discretion in approving the sale to Alto for $9.1 million because it ignored SRI's purported higher offer of $9.5 million, an offer they contend the receiver wrongfully refused to fully vet. Appellants' argument is without merit.

**{¶20}** The bidding procedure approved by the trial court — and to which appellants did not object — provided that all offers for the purchase of the property were to be made on a Property Purchase and Sale Agreement ("PPSA"), signed by the offeror, and delivered to the receiver no later than 5 p.m. on April 20, 2016. The deadline was later extended by the court at the receiver's request to May 26, 2016. The bidding procedures further provided that "[t]he receiver shall have the sole right, in his sole and absolute discretion, to accept or reject any signed PPSA, and the acceptance or rejection of any offer shall be in the sole and absolute discretion of the receiver." Likewise, the procedures established that the receiver and his agents had the "sole discretion" to review any offer, seek additional information regarding the offer, and reject any offer if the offer was not in the best interest of the receivership estate.

**{¶21}** Appellants' argument that the trial court erred in rejecting their bid because the receiver did not fully vet their offer is essentially an argument that the receiver erred

in exercising his discretion under the established bidding procedures. But appellants raised no objection whatsoever in the trial court to the bidding procedures, or to the fact that the receiver would have sole discretion to accept or reject any offers for the property. Accordingly, appellants have waived any argument on appeal that the receiver should have accepted, or at a minimum more fully vetted, their untimely offer. *Milling Away L.L.C. v. UGP Props. L.L.C.*, 8th Dist. Cuyahoga No. 95751, 2011-Ohio-1103, ¶ 12 ("It is well settled that a party who fails to raise an argument in the court below waives his or her right to raise it on appeal.")

{¶22} Moreover, it was not unreasonable for the receiver to not fully vet an offer that was submitted contrary to the established bidding procedure, after the conclusion of the bidding process, and only one day before the hearing on the receiver's motion to approve the sale. Per the bidding procedures, bids were to be submitted on a PPSA to the receiver by May 26, 2016. The bidding procedures also made clear that bidding was complete once the receiver sought approval of a sale, which occurred on July 20, 2016. Appellants' bid was submitted on August 1, 2016, in a pleading filed with the trial court entitled "notice of filing of competing offer to purchase receivership property and objection to receiver's pending motion to sell." Thus, appellants' assertion that "the only reason" their bid was noncompliant was because they did not submit evidence of funding with their original bid is not accurate. Appellants' bid was totally noncompliant with the established bidding procedures and, therefore, the receiver did not err in not fully vetting the bid.

{¶23} Likewise, the trial court did not abuse its discretion in approving the sale to Alto. As a result of appellants' failure to comply with the established bidding procedures, the trial court was left with Alto's $9.1 million offer. The testimony at the hearing regarding approval of the sale to Alto confirmed that it was indeed the highest and best offer for the property.

{¶24} Wagner testified regarding the offer that "it was the highest monetary offer that we had on the table with the tightest terms for us to approve." He testified further that Alto had the capacity "not just to acquire the property, but actually to execute and complete the project."

{¶25} The receiver testified that the Alto offer was the highest and best offer "[b]ecause it's a nonrefundable deposit. There's timeliness. And the other offers, they either wanted the deposit back or there [were] several other contingencies in any of the other offers." He testified that based both on his experience as a receiver and with the property at issue, he believed the Alto offer was the highest and best offer for the property.

{¶26} Our review of the record demonstrates that appellants were given numerous opportunities during the receivership proceedings to secure financing for the property, but never finalized any offer. During the hearing, the receiver acknowledged that he had spent three weeks vetting Alto's bid, but testified that taking additional time to vet appellant's offer would not change his decision to sell to Alto, because appellants had repeatedly demonstrated they did not have financing capability. On cross-examination

by appellants' counsel, the receiver testified that appellants' last-minute offer, unsupported by a demonstrated ability to actually close the transaction, was typical of what had repeatedly happened in the case:

> [E]very time we get in position to sell the property, your client seems to come up with a new person who is going to give them money.
>
> * * *
> This is typical of what's been happening in this case where your client keeps coming in at the last minute, coming up with some sort of, I'll have financing tomorrow. Albeit the last one we had was — let me answer your question — the last one we had, we needed 30 days. I believe he got more than 30 days. Then he came in, got another 10 days. Yet we're still sitting here with no financing from your client.

{¶27} When asked whether he had any objection to giving additional time to vet appellants' offer, the receiver stated, "I think it's going to put us down the same road we've been down three times already in this case, quite frankly. That's my opinion and I'm the receiver."

{¶28} A receiver is appointed for the benefit of all the creditors of the property subject to receivership. *Motel 4 BAPS, Inc*., 191 Ohio App.3d 90, 2010-Ohio-5792, at ¶ 8. Appellants' $9.5 million dollar offer would obviously be of no value to the creditors if they could not actually close on the property. As the receiver testified at the hearing, "Why would I sell a piece of property that I know somebody couldn't finance?" In light of appellants' repeated failures to redeem the property after being afforded numerous opportunities to do so, it is apparent that by approving Alto's $9.1 million offer, the trial court approved the sale of the property to a buyer who could actually pay the full purchase price and develop the property. Accordingly, the receiver did not abuse his

discretion in seeking approval to sell the property to Alto for $9.1 million, and the trial court did not abuse its discretion in approving the sale.

**{¶29}** The second assignment of error is overruled.

**{¶30}** Judgment affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____

KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

MARY EILEEN KILBANE, J., and
PATRICIA ANN BLACKMON, J., CONCUR.